Roberto Anguizola (IL Bar No. 6270874)
Frances Kern (MN Bar No. 395233)
Rebecca Plett (VA Bar No. 90988)
James Evans (VA Bar No. 83866)
Federal Trade Commission
600 Pennsylvania Ave., NW, Mailstop CC-5201
Washington, DC 20580
(202) 326-3284 / ranguizola@ftc.gov
(202) 326-2391 / fkern@ftc.gov
(202) 326-3664 / rplett@ftc.gov
(202) 326-2026 / james.evans@ftc.gov

Attorneys for Plaintiff
Federal Trade Commission

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| **Federal Trade Commission**,<br><br>Plaintiff,<br><br>v.<br><br>**Intuit Inc.**,<br><br>Defendant. | No. 5:22-cv-1973<br><br>Hearing: As soon as the matter may be heard.\*<br><br>**Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction** |

**Please take notice** that, as soon as this matter may be heard, pursuant to Federal Rule of Civil Procedure 65, Plaintiff, the Federal Trade Commission ("FTC"), will move this Court for a temporary restraining order ("TRO") and preliminary injunction pursuant to Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b).

Plaintiff seeks Court intervention to immediately halt Defendant Intuit Inc.'s deceptive advertising of TurboTax, a commonly-used online tax preparation service that enables users to prepare and file their income tax returns. Intuit's advertising violates the FTC Act and should be put on hold to avoid victimizing consumers during the end of tax filing season, when a substantial number of taxpayers file their returns, and during the pendency of an administrative proceeding on the merits before the FTC.

---

\* For reasons explained herein, this matter is urgent. The FTC respectfully requests that this Court act on this Motion as expeditiously as is possible.

# TABLE OF CONTENTS

I. Statement of Facts ..................................................................................................3

    A. Defendant Intuit ............................................................................................3

    B. Intuit's Business Practices ...........................................................................4

        1. TurboTax's "Freemium" Version: TurboTax Free Edition...........................4

        2. Intuit's Ads Misrepresent that Consumers Can File Their Taxes for Free Using TurboTax ...........................................................................7

        3. TurboTax's Home Page Contributes to the Net Impression of Intuit's "Free" Advertising Campaign by Misleading Consumers into Believing They Can File Their Taxes for Free Using TurboTax ........13

        4. TurboTax's Products and Pricing Screen and "Hard Stops" Contribute to the Monetization of Intuit's "Free" Advertising Campaign by Inducing Consumers to Upgrade from Free to Paid Versions of TurboTax ................................................................................16

        5. Intuit's Deception Harms Consumers and Competition ...........................19

            a. Pecuniary Harm for Consumers Eligible for Tax Preparation Alternatives that Are Actually Free ...........................20

            b. A Waste of Time and Privacy Intrusion for Ineligible Consumers.................................................................................21

            c. Injury to Honest Market Participants.............................................22

II. Argument: Immediate Entry of a TRO and Subsequent Entry of a Preliminary Injunction Is Necessary to Protect Consumers..........................................23

    A. The Evidence Shows that Plaintiff Is Likely to Succeed on the Merits of Count I (Deceptive Advertisements)..................................................24

        1. Intuit Has Repeatedly and Continuously Made the Alleged Representations Through Its Nationwide, Multi-Year "Free" TurboTax Advertising Campaign...................................................24

        2. Intuit's "Free" TurboTax Advertising Campaign Is Misleading...............25

           3.       Intuit's "Free" Claims Are Material .......................................................27

    B.     The Equities Favor Entry of a Temporary Restraining Order and

           Preliminary Injunction ........................................................................29

    C.     Any Purported Discontinuance of Illegal Conduct Is Insufficient to Avoid

           a TRO and Preliminary Injunction .......................................................30

III.   **Conclusion** .............................................................................................**30**

1

**TABLE OF AUTHORITIES**

2   **Cases**                                                                        **Page(s)**

3   *Cal. Dental Ass'n v. FTC*, 526 U.S. 756 (1999) .................................................... 22-23

4   *Carter Prods., Inc. v. FTC*, 186 F.2d 821 (7th Cir. 1951) ................................................ 27

5   *Enrico's, Inc. v. Rice*, 730 F.2d 1250, 1253 (9th Cir. 1984) .......................................... 30

6   *Exposition Press, Inc. v. FTC*, 295 F.2d 869 (2d Cir. 1961) .......................................... 27

7   *FTC v. Affordable Media, LLC*, 179 F.3d 1228 (9th Cir. 1999) ............................... 23, 29

8   *FTC v. Algoma Lumber Co.*, 291 U.S. 67 (1934) ................................................... 22-23

9   *FTC v. City West Advantage, Inc.*, No. 2:08-CV-00609, 2008 U.S. Dist. LEXIS 71608

10       (D. Nev. July 22, 2008) .......................................................................... 27

11  *FTC v. Commerce Planet, Inc.*, 878 F. Supp. 2d 1048 (C.D. Cal. 2012) ............................... 27, 28

12  *FTC v. Connelly*, 2006 U.S. Dist. LEXIS 98263 (C.D. Cal. Dec. 20, 2006) .............................. 27

13  *FTC v. Cyberspace.com LLC*, 453 F.3d 1196 (9th Cir. 2006) ................................... 25, 27

14  *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611 (6th Cir. 2014) ......................................... 27

15  *FTC v. Gill*, 265 F.3d 944 (9th Cir. 2001) ......................................................... 24, 26

16  *FTC v. Hardwire Interactive, Inc.*, 765 F. App'x 184 (9th Cir. 2019) ................................... 28

17  *FTC v. Ivy Capital, Inc.*, No. 2:11-cv-00283, 2013 U.S. Dist. LEXIS 42369

18       (D. Nev. Mar. 26, 2013) .......................................................................... 27

19  *FTC v. Johnson*, 96 F. Supp. 3d 1110 (D. Nev. 2015).................................................. 28-29

20  *FTC v. LeanSpa, LLC*, No. 3:11-cv-1715, 2015 U.S. Dist. LEXIS 26906

21       (D. Conn. Mar. 5, 2015) .......................................................................... 27

22  *FTC v. Lights of Am., Inc.*, No. 8:10-CV-1333, 2013 WL 5230681

23       (C.D. Cal. Sept. 17, 2013)....................................................................... 25-26

24  *FTC v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283 (S.D.N.Y. 2008) ............................... 27

25  *FTC v. Pantron I Corp.*, 33 F.3d 1088 (9th Cir.1994)................................................. 25-26

26  *FTC v. Sage Seminars, Inc.*, No. C95-2854, 1995 WL 798938 (N.D. Cal. Nov. 2, 1995) ........... 30

27  *FTC v. Stefanchik*, 559 F.3d 924 (9th Cir. 2009) ................................................... 24-26

28

*FTC v. Triangle Media Corp.*, No. 18-cv-1388, 2018 WL 6305675

    (S.D. Cal. Dec. 3, 2018).............................................................................................28

*FTC v. Warner Communications, Inc.*, 742 F.2d 1156 (9th Cir. 1984) ...........................23

*FTC v. Willms*, No. 11-cv-828, 2011 WL 4103542 (W.D. Wash. Sept. 13, 2011) ........29

*FTC v. Winsted Hosiery Co.*, 258 U.S. 483 (1922)................................................... 22-23

*FTC v. World Wide Factors, Ltd.*, 882 F.2d 344 (9th Cir. 1989)........................ 23-24, 29

*In re Encyclopedia Britannica, Inc.*, 87 F.T.C. 421 (1976)...................................... 26-27

*In re Grolier, Inc.*, 99 F.T.C. 379 (1982) ............................................................... 26-27

*In re Synchronal Corp.*, No. 9251, 1991 WL 639972 (F.T.C. Oct. 28, 1991)...............28

*Resort Car Rental Systems, Inc. v. FTC*, 518 F.2d 962 (9th Cir.1975) ...................25, 27

*U.S. v. Adteractive, Inc.*, 07-cv-5940 (N.D. Cal. Nov. 26, 2007)................................29

*United States v. W. T. Grant Co.*, 345 U.S. 629 (1953)................................................30

**Statutes and Rules**                                                          **Page(s)**

15 U.S.C. § 45.......................................................................................... 1, 23-24

15 U.S.C. § 53...............................................................................................1, 23

16 C.F.R. Part 3...................................................................................................1

16 C.F.R. § 251.1 ...................................................................................... 27-29

**Other Authorities**                                                           **Page(s)**

*FTC Statement on Deception*, 103 F.T.C. 174 (1984) (*appended to Cliffdale Assocs., Inc.*,

    103 F.T.C. 110 (1984)) ........................................................................ 22, 26-27

Pl.'s Emergency Mot. for TRO & PI
No. 5:22-cv-1973

**TABLE OF RELEVANT PRODUCT OR SERVICE NAMES**

| Tax Year | Calendar Year of Filing | Name of the "Freemium" Version of TurboTax | Name of the Free File Version of TurboTax |
|----------|----------|----------|----------|
| TY 2016 | 2017 | Federal Free Edition[*] | TurboTax Freedom Edition |
| TY 2017 | 2018 | TurboTax Free Edition[*] | TurboTax Freedom Edition |
| TY 2018 | 2019 | TurboTax Free Edition[†] | TurboTax Free File Program |
| TY 2019 | 2020 | TurboTax Free Edition[†] | IRS Free File Program Delivered by TurboTax |
| TY 2020 | 2021 | TurboTax Free Edition[‡] | IRS Free File Program Delivered by TurboTax |
| TY 2021 | 2022 | TurboTax Free Edition[§] | [none offered] |

**Key to eligibility limitations for the "freemium" version of TurboTax:**

[*] Returns that could be filed on a Form 1040A or 1040EZ.

[†] Returns that could be filed on a Form 1040, with no attached schedules.

[‡] Returns that could be filed on a Form 1040, with no attached schedules, except to claim unemployment income.

[§] Returns that can be filed on a Form 1040 with limited attached schedules to cover distinct tax situations, including student loan interest paid.

*See infra*, notes 24–28 and accompanying text.

**Other relevant product or service names:**

- "TurboTax Free," never used as the name of an Intuit product or service, but used in some ads for TurboTax (e.g. "TurboTax Free is free, free free free free.").
- "TurboTax All Free [SM]," a name that Intuit used for the Free File version of TurboTax on the IRS's website.

1  **PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS EMERGENCY**

2  **MOTION FOR A TRO AND PRELIMINARY INJUNCTION**

3      Much of Defendant Intuit's advertising for TurboTax, its marquee consumer tax service,

4  conveys the message that consumers can file their taxes for free using TurboTax, even going so

5  far as to air commercials in which almost every word spoken is the word "free." In truth,

6  TurboTax is only free for some users, based on the tax forms they need. TurboTax is not free for

7  taxpayers who do not have a "simple tax return," as defined by Intuit—a definition not met by

8  around two-thirds of taxpayers in recent years.[1] Intuit tells consumers ineligible to use TurboTax

9  for free, after they have invested time and effort gathering and inputting into TurboTax their

10  sensitive personal and financial information to prepare their tax returns, that they cannot continue

11  for free. Instead, Intuit informs these consumers they will need to upgrade to a paid TurboTax

12  version to complete and file their taxes. Because of this bait-and-switch, Intuit's advertisements

13  are deceptive.

14      On Monday, March 28, 2022, the Federal Trade Commission instituted an administrative

15  proceeding against Intuit under Part III of the Commission's Rules, 16 C.F.R. Part 3. The FTC

16  administrative complaint, like the complaint in this action, alleges that Intuit's deceptive ads

17  violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). The FTC brings this parallel action to

18  seek temporary and preliminary injunctive relief from this Court for the pendency of the

19  administrative proceeding pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b). It is

20  necessary and appropriate for this Court to put a stop to Intuit's deception before this year's tax

21  filing deadline and pending the Commission's resolution of the administrative complaint.

22          *   *   *

23      Ads for TurboTax are ubiquitous—especially as we near the end of the income tax return

24  filing season. But because TurboTax is not free for most taxpayers,[2] many of Intuit's ads are

25  deceptive. Consider TurboTax's "Dance Workout" ad. The ad opens on a dance workout class

26  moving to music with a strong beat. The instructor leads his class:

27

28

---

[1] *See infra* note 67.
[2] *See infra* note 67.

DANCE WORKOUT INSTRUCTOR: And free! Free, free. And free, and free. And freeeeeeeeee. And free, and free, and free, and free. And free. And free, free. And free.

VOICEOVER: That's right, TurboTax Free Edition is free. See details at TurboTax.com.[3]

Or consider Intuit's "Auctioneer" ad. The ad shows a cattle auction with a fast-talking auctioneer and a crowd of grizzled cowboys:[4]



And free, and free, and free, and free free free and free.

AUCTIONEER: And free, and free, and free, and free, and free. Now a bidder and free! Now give me another bidder and free, and a free here and a free free free a free free free. Now a bidder and free! Now give me another bidder and free, and a free free free. And free, and free, and free, and free free free and free. Here we go at free, free, free and free. Free! Now give me another bidder and free. Hit free and here, free, free, free, freeeeeeeeeeeeee. Free!

VOICEOVER: That's right, TurboTax Free Edition is free. See details at TurboTax.com.[5]

---

[3] GX 301 (Shiller Dec.), ¶ 23.
[4] GX 301 (Shiller Dec.), ¶ 16.
[5] GX 301 (Shiller Dec.), ¶ 17.

Pl.'s Emergency Mot. for TRO & PI
No. 5:22-cv-1973

1   The net impression of these ads is hard to miss, principally because it is practically the only word

2   spoken: free—that is, consumers can file their taxes for free using TurboTax.

3        But because most consumers can't file their taxes for free using TurboTax,[6] Intuit's ads

4   are a deceptive door-opener. They get consumers to come to TurboTax.com seeking to file their

5   taxes for free, but many of them eventually find out—after investing time and effort gathering

6   and inputting into TurboTax their sensitive personal and financial information—that they'll have

7   to pay Intuit up to $119 to file their taxes.[7] On television alone, Intuit aired ads in the "Free, Free,

8   Free, Free" campaign more than 11,054 times across at least 499 television networks from

9   November 1, 2021 to March 20, 2022.[8] They were also available on Intuit's YouTube channel as

10  of the date this Motion, where they have been viewed millions of times.[9]

11       On practically the eve of the FTC instituting legal proceedings against it, Intuit promised

12  to pull these ads from television. But exactly when is unclear—and they have aired on widely-

13  viewed current programming. The deceptive ads are also online. These ads ███████████

14  ████████████████████████ include deceptive "free" claims appearing on a

15  variety of mediums including social media, radio, blogs, and the TurboTax website. And Intuit

16  has made no effort to correct the misperceptions and confusion that these ads, which have aired

17  in heavy rotation for years, caused in the marketplace. Every day that Intuit's deceptive ads

18  continue, more consumers are likely to be harmed.

19  **I.    Statement of Facts**

20       **A.    Defendant Intuit**

21       Defendant Intuit Inc. is a Delaware corporation with its principal place of business in

22  Mountain View, California.[10] Intuit is publicly traded with annual revenues of $6.8 billion in

23  2019, $7.7 billion in 2020, and $9.6 billion in 2021.[11]

24

---

25   [6] *See infra* note 67.
     [7] Self-employed is currently the most expensive product, at $119. *See*
26  https://turbotax.intuit.com/personal-taxes/online/; *see also, e.g.*, GX 301 (Shiller Dec.), ¶ 54 &
    GX 240 (showing that it takes nearly quarter of an hour and pages of data entry to reach the hard
27  stop related to student loan interest deductions).
     [8] GX 301 (Shiller Dec.), ¶ 18–31.
28   [9] GX 301 (Shiller Dec.), ¶¶ 15–16, & 21 & GX 200, 206.
     [10] GX 301 (Shiller Dec.), ¶¶ 7-9 & GX 288 (Intuit 2021 Annual Report) at Cover Page.
     [11] GX 301 (Shiller Dec.), ¶ 9.b & GX 288 (Intuit 2021 Annual Report) at 5, 36 & 39.

Intuit advertises, markets, promotes, distributes, and sells TurboTax, a commonly-used online tax preparation service that enables users to prepare and file their income tax returns, to consumers throughout the United States. (As used in this Motion and the Complaint, "TurboTax" only refers to online products and services.) Intuit's TurboTax dominates the market for online tax preparation services. In May 2021, TurboTax's share of sales in the United States was 73%, 3 percentage points higher than in July 2020 and 10 percentage points higher than in April 2019.[12]

Intuit's income tax preparation products and services, including TurboTax, "have a significant and distinct seasonal pattern as sales and revenue from [them] are typically concentrated in the period from November through April."[13] ███████████████████ ████████████████████████████████████████████████████ ██████████████████████[14] Historically, 26% of annual sales for tax preparation services occur during the week of or week before Tax Day, the deadline for most individuals to file their income tax returns.[15] In 2021, 21% of sales year-to-date (as of the week of May 17) occurred the week of Tax Day and the week before (Tax Day was delayed due to a Covid-related tax deadline extension).[16]

**B.      Intuit's Business Practices**

**1.      TurboTax's "Freemium" Version: TurboTax Free Edition**

██████████████████████████████████████████████████████ ███████████████████[17] ██████████████████████ involves, in part, growing Intuit's

---

[12] GX 301 (Shiller Dec.), ¶ 10 & GX 289.
[13] GX 301 (S
[14] ███████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
begins-jan-24-irs-outlines-refund-timing-and-what-to-expect-in-advance-of-april-18-tax-deadline.
[16] GX 289.
[17] *See, e.g.* ████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████

customer base by offering free services to consumers ████████████████████████

████████████████ [18] ███████████████████████ also involves persuading consumers to upgrade

from free to paid versions of TurboTax.[19] ██████████████████ further involves "brand

loyalty," or retention of consumers who previously filed their taxes for free in the "freemium"

version of TurboTax returning to TurboTax in subsequent years when they are no longer eligible

for the "freemium" version, and paying Intuit for a paid version of TurboTax.[20] Since at least TY



2018, available at
https://postfunnel.com/freemium-software-pricing-model-retention-killer/

[20] *See*

lable at
https://www.profitwell.com/blog/freemium-tradeoffs.

Pl.'s Emergency Mot. for TRO & PI
No. 5:22-cv-1973

1  2017, Intuit has called the "freemium" version of TurboTax the "TurboTax Free Edition."[21] In

2  TY 2016, Intuit called the "freemium" version of TurboTax "Federal Free Edition."[22]

3       The "freemium" version of TurboTax is available only to consumers with "simple" tax

4  returns, as defined by Intuit; other consumers are required to upgrade to paid versions of

5  TurboTax to file their taxes.[23] In 2017 and 2018, when consumers filed tax returns for Tax Year

6  ("TY") 2016 and 2017 (*e.g.* taxes filed in 2017 for income earned in 2016), Intuit defined a

7  "simple" tax return as a return that could be filed using a 1040A or 1040EZ tax form.[24] In 2019,

8  when consumers filed tax returns for TY 2018, Intuit defined a "simple" tax return as a return

9  that could be filed on a Form 1040, with no attached schedules.[25] In 2021, when consumers filed

10 tax returns for TY 2020, Intuit defined a "simple" tax return as a return that could be filed on a

11 Form 1040, with no attached schedules, except to claim unemployment income.[26] Intuit currently

12 defines "simple" tax return as a return that can be filed on a Form 1040 with limited attached

13 schedules to cover distinct tax situations, including student loan interest paid.[27] Consumers who

14 receive income reported through certain types of IRS Form 1099 are not eligible for the

15 "freemium" version of TurboTax, regardless of their income.[28] This includes consumers who

16 receive independent contractor or small business income, such as consumers working in the gig

17 economy. From TY 2018 to at least TY 2019, consumers who claimed student loan interest



[21] *See*             ; GX 301 (Shiller Dec.), ¶ 11.
[22] *See*
[23]          c.), ¶¶ 32-33, 35-36, 46;

[25] *See*                 GX 301 (Shiller Dec.), ¶

[27] *See* GX 301 (Shiller Dec.), ¶ 64
[28] *See*

18),
), 278-79 (TY21).

deductions were not eligible for the "freemium" version of TurboTax, regardless of their income.[29] In short, determining what constitutes a "simple" tax return is anything but simple.

### 2. Intuit's Ads Misrepresent that Consumers Can File Their Taxes for Free Using TurboTax

Despite these limitations and the fact that millions of consumers are not eligible for the "freemium" version of TurboTax, Intuit has promoted TurboTax through an extensive and ongoing advertising campaign that represents that consumers can file their taxes for free using TurboTax.[30] Since at least 2016, Intuit has employed these deceptive door-opener ads, including via television, radio, YouTube, and social media, to promote the "freemium" version of TurboTax.[31] ████████████████████████████████████████

████████████████████,[32] which were broadcast in heavy rotation on television and online. These ads have included Intuit's "Absolute Zero" and "Free, Free, Free, Free" campaigns.[33]

---

[29] *See* ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████ *see also, e.g.* ████ 23

████ (TY

[30] ████████████████████████████████ *See* IRS, *Late-May Filing Statistics by AGI*, tbl. 1, IRS Tax Statistics (2020), https://www.irs.gov/pub/irs-soi/20inweek21.xls (providing that, for Tax Year 2019, 45,589,095 of the 115,861,167 tax returns filed using "Form 1040 with no Schedules 1-6 or Schedule A attac███████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

1    Intuit's "Absolute Zero" campaign informed consumers "at least your taxes are free."[34]

2  For the Absolute Zero campaign, Intuit's goal was for consumers to believe the offering was

3  truly free, and Intuit included the words "Free Guaranteed" in its Absolute Zero marketing to

4  bolster and emphasize the claim that the offer was truly free.[35]

5    Intuit also continues to run a deceptive door-opener ad campaign it calls "Free, Free,

6  Free, Free" in which "free" is essentially the only word spoken by the actors in the commercials,

7  until the voice over at the end of the advertisement.[36] Intuit has used at least six different

8  advertisements in this campaign, including an advertisement in which "free" was a word in a

9  spelling bee, another in which a court stenographer recorded a legal proceeding in which "free"

10  was the only word used, and another in which an exercise class instructor chants "free" while

11  leading a group workout.[37] A freeze frame with closed captioning from the exercise class

12  commercial, which Intuit is currently airing, appears below.

13

14

15

16

17

18

19

20

21

22  [35] See

23

24

25

26                    see also GX 301 (Shiller Dec.), ¶¶ 14, 16-18, 21-23,
                 d), 206, 208-209 ("Dance Workout" ad), GX 204-05

27  ("Dog Show" ad). Regarding the ongoing nature of the campaign, see GX 301 (Shiller Dec.),
    ¶¶ 19-20
28  [37]



And free, and free, and free, and free, and free.

In several ads, the word "free" is repeated over 40 times in a 30-second ad.[38] Commercials in the "Free, Free, Free, Free" campaign have informed consumers that "TurboTax Free is free, free free free free."[39] From November 1, 2021 to March 20, 2022, Intuit aired ads in the "Free, Free, Free, Free" campaign more than 11,054 times across at least 499 television networks.[40] This included televisions networks in every state in the Union.[41]

Many of Intuit's ads contain a fine print disclaimer at the end of the commercial informing consumers that the offer is limited to consumers with "simple tax returns" or "simple U.S. returns only."[42] The disclaimers are inadequate to cure the misrepresentation that consumers can file their taxes for free using TurboTax, when in truth, in numerous instances Intuit does not permit consumers to file their taxes for free using TurboTax. The disclaimers:

   a)   Are disproportionately small compared to the prominent text emphasizing that the service is free.

---

[38] *See, e.g.,* ███
[39] GX 301 (███  Dec.), ¶¶ 16-18, 21-22, 24, 27-29 & GX 200, 202-03 ("Auctioneer" ad), 206, 208-09 ("Dance Workout" ad), 204-205 ("Dog Show" ad).
[40] GX 301 (Shiller Dec.), ¶¶ 19-20, 25-26, 30-31.
[41] GX 301 (Shiller Dec.), ¶¶ 20, 26, 31 (showing airing of commercials nationally and by state).
[42] GX 301 (Shiller Dec.), ¶¶ 32-36.

 1             b)      Appear for just a few seconds, when the commercials aired in 15-, 30-,

 2                   and 60-second versions.

 3             c)      Are in writing only, often in font color similar to the background color,

 4                   and are not read by a voiceover.[43]

 5        Depicted below is a copy of a screen displayed to consumers during commercials aired as

 6 part of the "Free, Free, Free, Free" campaign, which includes a fine print disclaimer that the free

 7 offer was available only to consumers with "simple U.S. returns."[44]



17        As discussed above, what "simple" means can be a matter of interpretation, and Intuit's

18 definition of "simple" has changed over time. The disclaimer also appeared below a much more

19 prominent promotion: "**turbotax**free Free, free free free." While the above screen was shown to

20 consumers during commercials, in at least some of Intuit's commercials, an announcer said:

21 "That's right, TurboTax Free is free. Free, free free free."[45] The announcer did not read the fine

22 print disclaimer that it is for the "Free Edition product only. For simple U.S. returns."[46] Intuit has

23 never offered a product or service named only "TurboTax Free"—those words have always been

25     43



28     45

a component of longer names such as "TurboTax Free Edition" (for the "freemium" version of TurboTax).[47]

Similar ads are running even to this day. Depicted below is a copy of a screen displayed to consumers during commercials currently airing as part of the "Free, Free, Free, Free" campaign, which includes a similar fine print disclaimer:[48]



The screen is dominated by "**turbotax** Free Edition" in large print in the middle of the screen. While the above screen is shown to consumers briefly at the end of the "Free, Free, Free, Free" commercials, an announcer says: "That's right, TurboTax Free Edition is free. See details at turbotax.com."[49] The announcer does not read the fine print disclaimer stating: "TurboTax Free Edition is for simple U.S. returns only."[50]



[47]

[49] *Id.*
[50] GX 301 (Shiller Dec.), ¶ 34.

1    Given this deceptive door-opener advertising, reasonable consumers may believe that the

2    TurboTax products and services Intuit advertises as free are free for them—that they can file

3    their taxes for free using TurboTax. In addition, at least one of TurboTax's competitors, Cash

4    App Taxes (formerly Credit Karma Tax), has offered a truly free online tax preparation and filing

5    service to all consumers for five years.[51] Further, online products and services in many industries

6    are routinely offered to consumers completely free of charge, leading consumers to reasonably

7    conclude that free means free for Intuit's online tax preparation products.[52]

8    Intuit's false representation that consumers can file their taxes for free using TurboTax,

9    without adequately disclosing the limitations of its free offer, has induced and is inducing

10   consumers to begin using TurboTax, and after discovering that they are not eligible for the

11   "freemium" version of TurboTax, to pay for a paid version of TurboTax.[53]

12   In fact, a survey recently conducted by Yale Professor of Marketing Nathan Novemsky,

13   an expert in the psychology of judgment and decision-making, confirms that consumers are

14   misled by Intuit's "free" advertising campaign. According to Professor Novemsky's survey, a

15   substantial portion of the taxpayers who are ineligible to use the "freemium" version of

16   TurboTax (TurboTax Free Edition) under Intuit's criteria have the misimpression that they can

17   file their income taxes for free using TurboTax.[54] And a vast majority of these taxpayers identify

18   Intuit's TurboTax advertisements and its website as playing a role in forming their

19   misimpression.[55] Moreover, Professor Novemsky opines that Intuit's "simple returns" disclaimer

20   is ineffective.[56] According to his survey, a significant portion of the taxpayers who are not

21

22   [51] *See* Cash App Taxes, https://cash.app/taxes (last visited Mar. 28, 2022).
     [52] GX 302 (Novemsky Dec.), ¶ 27 ("Consumers have experience with many free online
23   services such as Google, Facebook, streaming audio and video content by YouTube and Spotify,
     online games, and many other online services. This breadth and frequency of experience with
24   free online services means that consumers are open to such offers from TurboTax.")
     [53] *See, e.g.*

25   ███████████████████████████████████████████

26   ███████████████████████████████████████████

27   ███████████████████████████████████

28   [55] *See* GX 302 (Novemsky Dec.) ¶ ¶ 25, 26 & Table 1.
     [56] GX 302 (Novemsky Dec.) ¶ 31 (the "simple returns" disclaimer is "is not sufficient to undo
     consumers' misimpression that they can file for free with TurboTax.").

eligible to use the "freemium" version of TurboTax under Intuit's criteria (and hence, do not have a "simple U.S. return" as Intuit defines the term) mistakenly believe that their returns are "simple" and therefore have the misimpression their returns meet Intuit's definition of a "simple U.S. return."[57] These survey results are consistent with Professor's Novemsky's assessment of consumer understanding of "free" claims.[58] According to Professor Novemsky, consumers are likely to be open to Intuit's "free" claims based on experiences they have with a plethora of free services available to consumers online.[59]

### 3. TurboTax's Home Page Contributes to the Net Impression of Intuit's "Free" Advertising Campaign by Misleading Consumers into Believing They Can File Their Taxes for Free Using TurboTax

When consumers who see Intuit's advertisements visit the TurboTax website, the website's home page does not disclose adequately to consumers the limitations on eligibility for the "freemium" version of TurboTax. For example, for TY 2018, the TurboTax home page contained the following screen, which mimicked the "free, free free free" ad campaign:[60]



---

[57] GX 302 (Novemsky Dec.) ¶¶ 29 & Table 3, 30 (showing that of consumers who have not used TurboTax in the last three years, 55% think their tax return is "simple" as Intuit defines it.).
[58] GX 302 (Novemsky Dec.) ¶ 27.
[59] *Id.*
[60] GX 301 (Shiller Dec.), ¶¶ 39-40.

1  The screen above, shown to consumers filing tax returns for TY 2018, failed to disclose

2  adequately the limitations on eligibility for at least three reasons:

3        a)     First, the limitations on eligibility were preceded by the words "FREE,

4               guaranteed." Intuit employees responsible for overseeing the marketing

5               and marketing strategy for the "freemium" version of TurboTax included

6               "guaranteed" ███████████████████████████████████████████

7               ███[61]

8        b)     Second, the disclosure language stated that consumers could file their

9               "simple tax returns for FREE," but no guidance was given about the

10              meaning of "simple tax return" on that screen. In a significant example,

11              Intuit would not have considered consumers receiving income reported on

12              certain types of IRS Form 1099 as having a "simple tax return." This

13              includes consumers receiving independent contractor or small business

14              income, such as consumers working in the gig economy by, for example,

15              providing rideshare services or delivering groceries.[62]

16       c)     Third, the eligibility requirement disclosures were hidden behind a

17              hyperlink over the words "See why it's free." Consumers had to click on

18              the hyperlink to trigger a pop up explaining the limitations.

19       Consumers who clicked on the orange button saying "File for $0" in the screen above

20  would be brought to a login screen and then start an online, automated "interview" to begin

21  entering information to file their taxes.[63] Consumers who were not eligible for the "freemium"

22  version of TurboTax would not learn they were ineligible until they had already invested

23  significant time and effort creating an account and inputting their sensitive personal and financial

24  information into TurboTax.[64]

25

26

27  _____

28  [61] *See supra* note 35.
    [62] *See supra* note 28.
    [63] GX 301 (Shiller Dec.), ¶¶ 48-59.
    [64] GX 301 (Shiller Dec.), ¶ 59.

Pl.'s Emergency Mot. for TRO & PI
No. 5:22-cv-1973

1       Since TY 2020, Intuit has continued to employ a customer interview model in which

2   consumers who are not eligible for the "freemium" version of TurboTax do not learn they are

3   ineligible until they have already invested significant time and effort creating an account and

4   inputting their sensitive personal and financial information into TurboTax.[65]

5       The screen Intuit currently uses on its website, for TY 2021, is pictured below.[66]



20  Once again, Intuit's website emphasizes "FREE," "$0," and "File for $0" at the top of the page,

21  when in numerous instances Intuit does not permit consumers to file their taxes for free using

22  TurboTax.[67] While "Simple tax returns only" is hyperlinked to more detailed terms and

---

[65] GX 301 (Shiller Dec.), ¶¶ 60–63; *see also, e.g., id.* ¶ 54 & GX 240 (showing that it takes nearly quarter of an hour and pages of data entry to reach the hard stop related to student loan interest deductions).

[66] GX 301 (Shiller Dec.), ¶ 65.

[67] According to IRS data for TY 2019, taxpayers filed 57,671,912 "[r]eturns that filed Form 1040 with no Schedules 1-6 or Schedule A attached," out of 157,682,637 total returns filed. *See* https://www.irs.gov/pub/irs-soi/20inweek53.xls (these data are explained at https://www.irs.gov/statistics/filing-season-statistics). Thus, taxpayers filed 100,010,725 returns with Schedules 1-6 or Schedule A attached, which is 63.43% of total returns. TurboTax's "freemium" product does not support these schedules, so for TY 2019, almost two-thirds of taxpayers were ineligible to use it. The same dataset for TY 2018 shows that 69.54% of tax

Pl.'s Emergency Mot. for TRO & PI
No. 5:22-cv-1973

1  conditions, the term "simple tax returns" is not understood by many consumers, and consumers

2  who assume they have a "simple tax return" are not likely to click to read more.[68]

3       Thus, Intuit continues to bombard consumers with the message that they can file their

4  taxes for "free." Intuit baits consumers with deceptive ads and then compound the deception with

5  more false claims and buried disclosures.

6       **4.**       **TurboTax's Products and Pricing Screen and "Hard Stops"**

7              **Contribute to the Monetization of Intuit's "Free" Advertising**

8              **Campaign by Inducing Consumers to Upgrade from Free to Paid**

9              **Versions of TurboTax**

10       Beyond the home page, additional features on the TurboTax website induce consumers to

11  use a paid version of TurboTax instead of the "freemium" version.

12       One such feature is what Intuit calls its "Products and Pricing" screen.[69] The current

13  headline on this screen tells consumers: "Let's find the right tax solution for you." A copy of that

14  screen is below.[70]



15

16

17

18

19

20

21

22

23

24

25

26

27  _____
returns could not have been filed through TurboTax's "freemium" product that year. *See*
https://www.irs.gov/pub/irs-soi/19inweek47expanded.xls.

[68] GX

28  [69] *See* ███████████████████████████████████████.

[70] GX

When consumers click on one of the tiles pictured above, the TurboTax website then recommends one of four versions of TurboTax. One is the "freemium" version; the others are paid.[71] At the bottom of this screen, all four versions are displayed, with the recommended version highlighted, depending on which tiles the consumer has selected.[72] At present, only four of the twelve tiles result in a recommendation of the "freemium" version of TurboTax, and selecting any of those in combination with one of the other eight changes the recommendation to a paid version of TurboTax.[73] Moreover, consumers can begin filing their taxes without selecting any options on the "Products and Pricing" screen and can still select the "Free Edition" option to begin filing their taxes.[74]

If consumers move on from the Products and Pricing screen and start using the "freemium" version of TurboTax, they begin an "interview" process in which they input their tax information for the year. As they progress through the interview, Intuit has represented, and currently represents, to consumers who are not eligible for the "freemium" version of TurboTax that they must pay Intuit to file their tax returns online.[75] Intuit informed consumers of these required upgrades using screens its employees call "Hard Stops."[76] Intuit continues to employ similar Hard Stops in the "freemium" version of TurboTax.[77]

When consumers use the "freemium" version of TurboTax, it first asks them a series of general questions on successive webpages about their financial situation.[78] These questions enable Intuit to determine whether consumers are eligible for the "freemium" version of TurboTax and include, among other things, whether the consumer paid student loan interest or was self-employed.[79] Next, consumers are prompted to input their income by category.[80] When consumers indicate that they need to report income on certain types of IRS Form 1099 (which

---

[71] *Id.*
[72] *Id.*
[73] *Id.*
[74] *Id.*
[75] *Id.* ¶ 67.
[76] *Id.*; *see, e.g.,* ███████████████.
[77] GX 301 (
[78]
[79]

could be because entities that paid them classified them as independent contractors, such as consumers working in the gig economy by, for example, providing rideshare services or delivering groceries), the "freemium" version of TurboTax displays a Hard Stop informing them that they cannot proceed for free.[81] For example, a current Hard Stop, depicted below, tells consumers: "To accurately report this income, you'll need to upgrade."[82] The Hard Stop screen tell consumers they must upgrade to accurately file their taxes, and that they will have to pay up to $59.99 for TurboTax Deluxe and up to $119 for TurboTax Self-Employed at full price (though discounts may be available, as in the case below).[83]



## To accurately report this income, you'll need to upgrade

| | Free Edition | Deluxe | Self-Employed |
|---|---|---|---|
| Report W-2 income | ✓ | ✓ | ✓ |
| Report multiple sources of income–1099-NEC, 1099-MISC, 1099-K, & more | | ✓ | ✓ |
| One-on-one help–get personalized answers from a TurboTax specialist | | 👤 | 👤 |
| Maximize deductions–claim business expenses related to auto, utilities, supplies, & more | | | ✓ |
| | $0* | ~~$59~~ $39* State additional | ~~$119~~ $89* State additional Pays for itself |
| | Don't upgrade | Upgrade | Upgrade |

Don't worry about pulling out your wallet–look for the payment option to deduct the cost from your federal refund when you file.

† Important offer details and disclosures

---

[81] *Id.*; *see also supra* note 28
[82] GX ███████
[83] *Id.*; ████████████████████ .

Pl.'s Emergency Mot. for TRO & PI
No. 5:22-cv-1973

Thus, Intuit's deceptive door-opener ads touting "Free, Free, Free, Free" bring consumers to the TurboTax website representing that consumers can file their taxes for free using TurboTax, but once there, many consumers encounter a "Products and Pricing" screen and/or "Hard Stops" that inform them that they cannot complete and file their taxes for free. In the case of the Hard Stop screens, this confrontation comes after consumers have already created a TurboTax account and input highly sensitive personal and financial information into Intuit's user interface— sometimes after investing substantial time to do so.[84] Once consumers pay Intuit to complete and file their taxes, the bait-and-switch is complete until the next tax season, when Intuit uses the information it collects from consumers to market additional products and services to consumers.

### 5.    Intuit's Deception Harms Consumers and Competition

Intuit's deception harms consumers and competition in a variety of ways including: (1) pecuniary injury suffered by consumers who were eligible for tax preparation alternatives that are actually free; (2) wasted time and effort; (3) privacy harm associated with entering sensitive personal and financial information into TurboTax under the false impression that they would be able to file for free; and (4) injury to honest participants in the tax preparation market.

In considering the harms to consumers, it's useful to keep in mind the context: Intuit's ads and website reach consumers at a moment of vulnerability—tax time.



It's no surprise that consumers experience ███████████████ surrounding their annual income tax return filings—there's a fixed government deadline, there are legal consequences for not paying taxes correctly, and taxes are complicated. Not to mention the fact that, for many,

---

[84] *See, e.g.*, GX 301 (Shiller Dec.), ¶ 54 & GX 240 (showing that it takes nearly quarter of an hour █████████████████████████████rd stop related to student loan interest deductions).
[85] ██████████████████████████████.

1   their tax refund is several times greater than their paycheck.[86] Additionally, millions of

2   Americans procrastinate and file their tax returns the last week before Tax Day.[87] And many of

3   those consumers are not even purchasing tax preparation service until the end of the tax season.[88]

4   As a result, consumers making purchasing decisions for tax preparation services are likely to feel

5   stressed and rushed.

        a.    **Pecuniary Harm for Consumers Eligible for Tax Preparation**
              **Alternatives that Are Actually Free**

8            Many consumers suffer pecuniary harm as a result of Intuit's deceptive "free" advertising

9   campaign for TurboTax. ███████████████████████████

10  ████████████████████████████████████.[89] It's possible that some of

11  these consumers incorrectly believe that if they are ineligible for the "freemium" version of

12  TurboTax, they must be ineligible for other free tax preparation alternatives. Until 2021, Intuit

13  itself had a free alternative that many consumers could have used to prepare their taxes at no cost

14  through the version of TurboTax that was part of the IRS's Free File Program, a public-private

15  partnership between, among others, Intuit and the Internal Revenue Service.[90] ████████

---

[86] *See* Diana Farrell, Fiona Greig, and Amar Hamoudi, JPMorgan Chase Institute, "Tax Time: How Families Manage Tax Refunds and Payments" (2019), at 12 (study finding that: "Refund families receive an average of 5.7 weeks' income in their tax refund."), *available at* https://www.jpmorganchase.com/content/dam/jpmc/jpmorgan-chase-and-co/institute/pdf/institute-tax-time-report-full.pdf.

[87] Carmen Reinicke, *A third of Americans file taxes at the last minute. Why that might be a bad idea*, CNBC (Apr. 28, 2021), https://www.cnbc.com/2021/04/28/one-third-of-americans-file-taxes-last-minute-it-might-be-a-bad-idea.html (last visited Mar. 27, 2022) ("As many as 33% of Americans procrastinate doing their taxes and wait until the last minute …. The reasons taxpayers put it off vary—40% say filing is too time-consuming, 22% said it's too stressful and another 22% want to make sure they're filing correctly."); Ben Casselman, *Everyone Files Their Taxes At The Last Minute*, FiveThirtyEight (Apr. 15, 2016), https://fivethirtyeight.com/features/everyone-files-their-taxes-at-the-last-minute/ (last visited Mar. 27, 2022) ("Last year, 21.5 million Americans waited until the last minute—or at least the last week –to submit their tax returns. That's roughly one in seven filers.").

[88] GX 289, at 1 ("roughly 26 percent of annual sales for tax preparation services occurred during the week of or week before Tax Day," the deadline for most individuals to file their income tax returns, in 2017to 2019, there were similar figures in 2020 and 2021); *see also* IRS Press Release, https://www.irs.gov/newsroom/2022-tax-filing-season-begins-jan-24-irs-outlines-refund-timing-and-what-to-expect-in-advance-of-april-18-tax-deadline

[89] ████████████████████████████████████████████████████
████████████████████████████████████████████████████

Solve Their Most Pressing Financial Problems (Jul. 15, 2021), *available at* https://www.intuit.com/blog/news-

Pl.'s Emergency Mot. for TRO & PI
No. 5:22-cv-1973

5  While Intuit left the Free File Program following the conclusion of the 2021 tax season, the Free

6  File Program continues to offer online tax preparation at no cost using industry-leading tax

7  services.[93] Seventy percent of American taxpayers (about 100 million people) are eligible for the

8  IRS's Free File Program.[94] Ninety-seven percent of Free File users would recommend the

9  program to others based on a 2021 survey.[95]

**b.    A Waste of Time and Privacy Intrusion for Ineligible Consumers**

Other consumers spend considerable time and energy entering their sensitive personal

and financial information into TurboTax, only to learn that it is not "free" for them,

social/accelerating-technology-innovation-to-bet                                    essing-financial-problems/ (last visited Mar. 28, 2022);

[92]
[93]                                                                  Solve Their Most
Pressing Financial Problems (Jul. 15, 2021), *available at*: https://www.intuit.com/blog/news-social/accelerating-technology-innovation-to-better-help-consumers-solve-their-most-pressing-financial-problems/ (last visited Mar. 28, 2022); IRS, IRS Free File: Do your Taxes for Free https://www.irs.gov/filing/free-file-do-your-federal-taxes-for-free (last visited Mar. 28, 2022).
[94] Free File Alliance, available at https://freefilealliance.org/ (last visited Mar. 28, 2022);
Eighth Memorandum of Understanding on Service Standards and Disputes Between the Internal Revenue Service and Free File, Incorporated (Oct. 31, 2018), *available at*
https://www.irs.gov/pub/irs-utl/Eight%20Free%20File%20MOU.pdf.
[95]
[96]

1   ████████████████████████[97] For these consumers, the injury they suffer because of

2   Intuit's deception is real, but admittedly is intangible and difficult to quantify. This includes

3   wasted time and effort associated with navigating to the TurboTax website and entering enough

4   information to learn that they are not eligible to file for free using TurboTax. They also suffer a

5   privacy harm in that they provide Intuit with sensitive personal and financial information they

6   would not have entered if they had known that TurboTax was not "free" for them.[98] Many of

7   these consumers enter the Intuit ecosystem based on the express, indeed repeated, promise of

8   receiving free tax preparation, but may end up opening themselves up to advertising and

9   unwanted communications for other services, promotions or other services by Intuit and its

10  subsidiaries and affiliates.[99]

### c.   Injury to Honest Market Participants

12          Finally, Intuit's deception harms honest participants in the tax preparation services

13  industry. Where, as here, a deceptive ad campaign draws attention to a product or service, it by

14  necessity lures consumers away from honest competitors.[100] The fact this harm is difficult to

15  quantify does not make it any less real.

---

[97] ████████████████████████████████████████████████████████████

GX 301 (Shiller Dec.), ¶ 54 & GX 240 (video showing that it takes nearly quarter of a   hour ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

d have read and acknowledged [Intuit's] Global Privacy Statement"); *id.* ¶ 54 & GX 240 (video) (showing that consumers are presented with a consent screen where they can opt-in to allow Intuit to use tax filing information for purposes other than tax filling), *id.* ¶ 51 & GX 285 (TY 2021 Global Privacy Statement) at 2 ("Creating an account: We collect information when you (or your organization) create an account, interact with the Intuit Platform or activate a subscription. Personal information may include your name, address, phone number and email, country, profile photo, billing information (your payment information), usernames and credentials.)" Intuit uses that information to "[e]valuate your eligibility for financial or other marketing offers, products and services."), *id.* ¶ 52 & GX 286 (TY 2021 TurboTax Login Terms), at 1 ("By using Intuit services, you are instructing us to share your data across our platform for marketing, eligibility and other purposes described in our Global Privacy Statement, consistent with applicable law."), *id.* ¶ 57 & GX 287 (TY 2021 consent page).

[100] *FTC Statement on Deception*, 103 F.T.C. 110, 174 & n.58 (1984) (*appended to Cliffdale Assocs., Inc.*, 103 F.T.C. 110 (1984)) ("Deception Policy Statement") ("The prohibitions of Section 5 are intended to prevent injury to competitors as well as to consumers. The Commission regards injury to competitors as identical to injury to consumers. Advertising and legitimate marketing techniques are intended to "lure" competitors by directing business to the advertiser.

II.     **Argument: Immediate Entry of a TRO and Subsequent Entry of a Preliminary Injunction Is Necessary to Protect Consumers**

In light of Intuit's deceptive door-opener advertising campaign, Plaintiff seeks a TRO and a preliminary injunction that enjoin Intuit from misrepresenting that consumers can file their taxes for free using TurboTax. Immediate entry of a TRO is necessary to halt Intuit's ongoing deception as we enter the peak of the tax filing season and millions of American taxpayers prepare to meet the April 18 tax deadline. As set forth below, and supported by the Plaintiff's seven volumes of evidence, there is ample basis for the entry of a TRO and a preliminary injunction against Intuit.

Intuit's deceptive "free" advertising campaign violates Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Where, as here, a defendant has engaged in deception, Section 13(b) of the FTC Act authorizes the Commission to seek, and this Court to issue, preliminary injunctive relief to prevent ongoing deception until the Commission can adjudicate the lawfulness of the conduct in an administrative proceeding. 15 U.S.C. § 53(b).

In determining whether to grant preliminary relief under Section 13(b), the Court must consider two factors: (1) the FTC's likelihood of ultimate success on the merits, and (2) whether the public equities outweigh any private equities. *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1233 (9th Cir. 1999) (citing *FTC v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1160 (9th Cir. 1984)). Unlike private litigants, the FTC does not need to prove irreparable injury, *Affordable Media*, 179 F.3d at 1233, which is presumed in a statutory enforcement action, *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989). Nor must the FTC prove harm to the

---

In fact, vigorous competitive advertising can actually benefit consumers by lowering prices, encouraging product innovation, and increasing the specificity and amount of information available to consumers. Deceptive practices injure both competitors and consumers because consumers who preferred the competitor's product are wrongly diverted."); *Cal. Dental Ass'n v. FTC*, 526 U.S. 756, 771, n.9 (1999) (citing *FTC v. Algoma Lumber Co.*, 291 U.S. 67, 79–80 (1934)) (holding that "advertising restrictions might plausibly be thought to have a net procompetitive effect, or possibly no effect at all on competition" and stating in a footnote that "false or misleading advertising has an anticompetitive effect."); *FTC v. Winsted Hosiery Co.*, 258 U.S. 483, 493 (1922) ("when misbranded goods attract customers by means of the fraud which they perpetrate, trade is diverted from the producer of truthfully marked goods."); *see also* Xinayo Kong & Anita Rao, *Do Made in USA Claims Matter?*, at 30 (Univ. of Chi., Becker Friedman Inst. for Econ, Working Paper No. 2019-138, 2020), *available at* https://ssrn.com/abstract=3468543 (finding that "Made in the USA" claims increased consumer demand for products, and created an incentive to make deceptive claims).

public interest, which is also presumed. *Id.* at 346. When weighing the equities, the public interest should receive greater weight than private interests. *Id.* at 347. As set forth in this memorandum, Plaintiff has amply demonstrated that it will ultimately succeed on the merits of its claim that Intuit has violated the FTC Act and that the equities weigh heavily in favor of the requested preliminary relief.

**A.     The Evidence Shows that Plaintiff Is Likely to Succeed on the Merits of Count I (Deceptive Advertisements)**

The evidence shows that Plaintiff is likely to succeed on the merits of Count I, which alleges that Intuit is engaged in deception by misrepresenting that consumers can file their taxes for free using TurboTax when, in numerous instances, Intuit does not permit consumers to file their taxes for free using TurboTax, in violation of Section 5(a) of the FTC Act.

The FTC Act prohibits the making of false claims like the ones made by Intuit in its "free" advertising campaign for the "freemium" version of TurboTax. "Deceptive acts or practices in or affecting commerce" are unlawful under section 5(a) of the FTC Act. 15 U.S.C. § 45(a). To establish that a defendant has engaged in a deceptive act or practice under Section 5(a) of the FTC Act, the FTC must show: (1) the defendant made the alleged representation, omission, or practice; (2) the representations, omission, or practice was likely to mislead consumers acting reasonably under the circumstances; and (3) the representation, omission, or practice is material. *FTC v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009) (quoting *FTC v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001)).

**1.     Intuit Has Repeatedly and Continuously Made the Alleged Representations Through Its Nationwide, Multi-Year "Free" TurboTax Advertising Campaign**

There is no question that Intuit made the representations alleged in the Complaint. As more fully described above in Section I.B.2, Intuit has repeatedly and continuously conveyed the message that TurboTax is free through a long-running and widely disseminated multi-media advertising campaign that includes Internet advertising and social media, radio, and television ads. Intuit fails to adequately disclose that only some consumers were eligible for the

1    "freemium" version of TurboTax. Intuit has reached tens—if not hundreds—of millions of

2    consumers throughout the United States with its ongoing "free" TurboTax advertising

3    campaign.[101]

4            "Deception may be found based on the 'net impression' created by a representation."

5    *Stefanchik*, 559 F.3d at 928 (quoting *FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1200 (9th Cir.

6    2006)). The net impression of the representation in Intuit's "free" ads is clear, in no small part

7    because the company repeats the key word so many times:

8                    DANCE WORKOUT INSTRUCTOR: And free! Free, free. And
                     free, and free. And freeeeeeeeee. And free, and free, and free, and
9                    free, and free. And free. And free, free. And free.

10                   VOICEOVER: That's right, TurboTax Free Edition is free. See
                     details at TurboTax.com.[102]
11

12   These are not ads that require a complicated parsing to decipher. There is no need to read

13   between the lines, because the lines contain the likes of "freeeeeeeeee," and "free, and free, and

14   free, and free, and free." Intuit's message is comically obvious—and indeed the comedy is part

15   of Intuit's appeal to consumers through these ads. They are catchy, they are funny, and they are

16   omnipresent during tax season. They are also deceptive.

17           A voiceover saying "See details at TurboTax.com" and a disclaimer in small, faint print at

18   the bottom of the screen referencing "simple U.S. returns," which appears for just a few seconds,

19   are inadequate to correct the deceptive net impression made by chanting "free, free, free, free" at

20   consumers for the bulk of the ad. "A solicitation may be likely to mislead by virtue of the net

21   impression it creates even though the solicitation also contains truthful disclosures."

22   *Cyberspace.com*, 453 F.3d at 1200.

23           **2.      Intuit's "Free" TurboTax Advertising Campaign Is Misleading**

24           The net impression of Intuit's advertising claims—that consumers can file their taxes

25   with TurboTax for "free"—is likely to mislead consumers. A representation is likely to mislead

26   consumers if the express or implied message conveyed is false or lacks a reasonable basis. *FTC*

27

28   ---
     [101] GX 301 (Shiller Dec.), ¶¶ 18-19, 24-25, 29-30 (showing television ad airing information).
     [102] GX 301 (Shiller Dec.), ¶ 23.

1   *v. Pantron I Corp.*, 33 F.3d 1088, 1096 (9th Cir.1994); *FTC v. Lights of Am., Inc.*, No. 8:10-CV-

2   1333, 2013 WL 5230681, at *40 (C.D. Cal. Sept. 17, 2013). Advertisements that are "capable of

3   being interpreted in a misleading way should be construed against the advertiser." *Gill*, 71

4   F.Supp.2d at 1045–46 (quoting *Resort Car Rental Systems, Inc. v. FTC*, 518 F.2d 962, 964 (9th

5   Cir.1975)). And the FTC is not required to show that every reasonable consumer would have

6   been, or in fact was, misled. *See Stefanchik*, 559 F.3d at 929.

7        The perspective of the consumer is also significant: "[W]e examine the practice from the

8   perspective of a consumer acting reasonably in the circumstances. If the representation or

9   practice affects or is directed primarily to a particular group, the Commission examines

10  reasonableness from the perspective of that group." *FTC Statement on Deception*, 103 F.T.C.

11  174, 175 (1984) (*appended to In re Cliffdale Assocs., Inc.*, 103 F.T.C. 110 (1984)) (hereinafter

12  "Deception Policy Statement"). Here, Intuit's ads are targeted to a particular group—taxpayers

13  during tax filing season. This is a large group, but it is nonetheless particularized, given the

14  unique circumstances surrounding tax preparation and filing. *See supra* Part I.B.5. The

15  reasonable consumer targeted by Intuit's ads is likely experiencing ████████████

16  about filing their taxes. *Id.* Every U.S. taxpayer can relate. And Intuit's representation that at

17  least their taxes will be free is meaningful. *See infra* Part II.A.3. But Intuit's "free" claim is false

18  because TurboTax is not free for most consumers.[103] It is only free for certain consumers that

19  meet Intuit's eligibility criteria, and those criteria are not adequately disclosed in Intuit's

20  advertising.

21        As described more fully above in Section I.B.2, a survey recently conducted by Yale

22  Professor of Marketing Nathan Novemsky, an expert in the psychology of judgment and

23  decision-making, confirms that consumers are misled by Intuit's "free" advertising campaign.

24        The fact that consumers learn that the "freemium" version of TurboTax is not "free" for

25  them prior to purchasing a paid version of TurboTax does not cure the deception. "Misleading

26  door openers," like Intuit's, have long been held illegal. *See e.g., Encyc. Britannica, Inc.*, 87

27  F.T.C. 421, 495-97, 531 (1976), *aff'd*, 605 F.2d 964 (7th Cir. 1979), *as modified*, 100 F.T.C. 500

28

---

[103] *See supra* note 67.

(1982); *see also Grolier, Inc.*, 99 F.T.C. 379, 383 (1982), *aff'd*, 699 F.2d 983 (9th Cir. 1983), *as modified*, 104 F.T.C. 639 (1984). "[W]hen the first contact between the seller and a buyer occurs through a deceptive practice, the law may be violated, even if the truth is subsequently made known to the purchaser." *Deception Policy Statement*, 103 F.T.C. at 180 & n.37.[104]

### 3.    Intuit's "Free" Claims Are Material

Intuit's advertising claims that consumers can use TurboTax for "free" are material. A representation, omission, or practice is material if it "involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Cyberspace.com*, 453 F.3d at 1201 (quoting *In re Cliffdale Assocs.*, 103 F.T.C. 110, 165 (1984)). Whether a product or service is "free" matters to consumers. It is well established that the offer of "free" products or services "is a promotional device frequently used to attract customers" that "has often been found to be a useful and valuable marketing tool." Guide Concerning Use of the Word "Free" and Similar Representations, 16 C.F.R. § 251.1(a)(1). "Because the purchasing public continually searches for the best buy, and regards the offer of "free" merchandise or service to be a special bargain, all such offers must be made with extreme care so as to avoid any possibility that consumers will be misled or deceived." 16 C.F.R. § 251.1(a)(2). For this reason, the FTC has consistently taken the position that "free" means free. *See generally* 16 C.F.R. § 251.1(b)(1) ("Meaning of 'Free'"). In other words, when a merchant advertises that a product or service is "free," the purchasing public understands the word "free" to indicate that the consumer will pay nothing. *Id.* And the purchasing public "has a right to believe that the merchant will not directly and immediately recover, in whole or in part, the cost of the free merchandise or service …." *Id.*

---

[104] A number of courts have stated or held, both before and after issuance of the *Deception Policy Statement*, that the FTC Act is violated if a consumer's first contact is induced through deception, even if the truth is clarified prior to purchase. *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 632 (6th Cir. 2014); *Resort Car Rental Sys., Inc.*, 518 F.2d at 964; *Exposition Press, Inc. v. FTC*, 295 F.2d 869, 873 (2d Cir. 1961); *Carter Prods., Inc. v. FTC*, 186 F.2d 821, 824 (7th Cir. 1951); *FTC v. LeanSpa, LLC*, No. 3:11-cv-1715, 2015 U.S. Dist. LEXIS 26906, at *33-34 (D. Conn. Mar. 5, 2015); *FTC v. Ivy Capital, Inc.*, No. 2:11-cv-00283, 2013 U.S. Dist. LEXIS 42369, at *23 (D. Nev. Mar. 26, 2013); *FTC v. Commerce Planet, Inc.*, 878 F. Supp. 2d 1048, 1066 (C.D. Cal. 2012); *FTC v. City West Advantage, Inc.*, No. 2:08-CV-00609, 2008 U.S. Dist. LEXIS 71608, at *7-9 (D. Nev. July 22, 2008); *FTC v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 304 (S.D.N.Y. 2008); *FTC v. Connelly*, 2006 U.S. Dist. LEXIS 98263, at *49 (C.D. Cal. Dec. 20, 2006).

An advertising claim that a product or service is "free" is a claim about the cost of the advertised product or service. Advertising claims about the cost of a product or service pertain to a central characteristic of the product or service, and therefore are presumptively material. *FTC v. Commerce Planet, Inc.*, 878 F. Supp. 2d 1048, 1068 (C.D. Cal. 2012) ("This misrepresentation is undoubtedly material because the information about a free kit goes to the cost of the product, an important factor in a consumer's decision on whether or not to purchase a product."), *aff'd in part, vacated in part on other grounds*, 815 F.3d 593 (9th Cir. 2016). Therefore, companies may not make deceptive claims that products or services are "free" when that is not the case. *See, e.g., FTC v. Triangle Media Corp.*, No. 18-cv-1388, 2018 WL 6305675 (S.D. Cal. Dec. 3, 2018), *aff'd sub nom. FTC v. Hardwire Interactive, Inc.*, 765 F. App'x 184 (9th Cir. 2019) (alleging that defendants deceptively represented that a product was free, just to charge consumers for it 18 days later, and failing to properly disclose negative options); *In re Synchronal Corp., et al.*, No. 9251, 1991 WL 639972, at *12 (F.T.C. Oct. 28, 1991) (where representatives told consumers that they would receive free products but ended up billing consumers for those products).

Moreover, claims that an item is free require a heightened standard of disclosure of all material terms, and all such offers must be made with extreme care to avoid any possibility that consumers will be misled or deceived. Thus, when a product or service is offered for free, all the terms and conditions of the offer should be made clear at the outset. *See* Guide Concerning Use of the Word "Free" and Similar Representations 16 C.F.R. 251.1(c) ("[C]onditions and obligations upon which receipt and retention of the 'Free' item are contingent should be set forth clearly and conspicuously at the outset of the offer so as to leave no reasonable probability that the terms of the offer might be misunderstood. Stated differently, all of the terms, conditions and obligations should appear in close conjunction with the offer of 'Free' merchandise or service. For example, disclosure of the terms of the offer set forth in a footnote of an advertisement to which reference is made by an asterisk or other symbol placed next to the offer, is not regarded as making disclosure at the outset"); *FTC v. Johnson*, 96 F. Supp. 3d 1110, 1146 (D. Nev. 2015) (holding that websites advertising "free" products were deceptive for failing to disclose negative option membership and upsells and reasoning that "[t]he mere fact that the sites contained

disclosures in smaller print and described the upsells as 'bonuses' and trials at the bottom of the order pages, does not alter the deceptive net impression as to the cost and nature of the product because consumers would not be inclined to seek out this information"). Hidden or poorly disclosed costs or conditions are deceptive. *FTC v. Willms*, No. 11-cv-828, 2011 WL 4103542, at *6 (W.D. Wash. Sept. 13, 2011) (holding that the FTC was likely to prevail on the merits where "enrollment fees and recurring costs [were] poorly disclosed" when they appeared only after the consumer had seen the landing page and four additional webpages after that); *see also U.S. v. Adteractive, Inc.*, 07-cv-5940 (N.D. Cal. Nov. 26, 2007) (consent case alleging that defendants deceptively advertised "free" merchandise without disclosing in their advertising or landing page that consumers had to accept and pay for a certain number of goods in order to be eligible for the "free" merchandise, which many consumers only discovered after spending significant time trying to qualify for the product). This is particularly true where, as here, the product or service is not free for most consumers—in 2020, two-thirds of taxpayers were not eligible to use the free version of TurboTax.[105]

### B. The Equities Favor Entry of a Temporary Restraining Order and Preliminary Injunction

Preliminary injunctive relief is warranted if the Court, in weighing the equities, finds that injunctive relief is in the public interest. "[W]hen a district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight." *Affordable Media*, 179 F.3d at 1236 (quoting *World Wide Factors*, 882 F.2d at 347). The public interest in this case is compelling—halting deceptive and injurious conduct at a time when many consumers are hurriedly preparing to meet the Tax Day deadline. Defendants, by contrast, have no legitimate interest in continuing to deceive consumers.

Based on the evidence before the Court, the FTC is likely to succeed on the merits, and the equities tip decidedly in the public's favor. Thus, a TRO is warranted.

---

[105] *See supra* note 67.

1    **C.     Any Purported Discontinuance of Illegal Conduct Is Insufficient to Avoid a**

2    **TRO and Preliminary Injunction**

3    Intuit has claimed that it is pulling the violative ads from the television airwaves. It has

4    been noncommittal on whether it is also pulling them from online and social media platforms.

5    Whatever Intuit's intentions are, however, they are irrelevant to whether this Court should issue a

6    TRO and preliminary injunction that puts a stop to Intuit's deception. "Indeed, the Supreme

7    Court has counseled that courts should be wary of a defendant's termination of illegal conduct

8    when, as here, such action is taken in anticipation of formal intervention." *FTC v. Sage Seminars,*

9    *Inc.*, No. C95-2854, 1995 WL 798938, at *6 (N.D. Cal. Nov. 2, 1995) (Armstrong, J.) (citing

10   *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953)). As Intuit's claimed cessation of

11   conduct "occurred only *after* defendant[] learned that the FTC had commenced an investigation

12   into [its] practices"—indeed, only after Intuit learned that the FTC was on the brink of

13   litigation—the cessation "can hardly be considered 'voluntary.'" *Id.* (emphasis in original)

14   (citing *Enrico's, Inc. v. Rice*, 730 F.2d 1250, 1253 (9th Cir. 1984)). In any event, the Court need

15   not dwell long on whether Intuit's violations of the law are likely to recur, as any purported take-

16   down is not complete, and the violative ads were still in the marketplace as of today.[106]

17   **III.    Conclusion**

18   For these reasons, Plaintiff respectfully requests that the Court issue a TRO, substantially

19   in the form of the proposed TRO filed concurrently with this motion, pending a hearing on

20   Plaintiff's request for a preliminary injunction. Plaintiff also respectfully requests that the Court

21   issue a preliminary injunction for the pendency of an administrative proceeding on the merits.

22

23

24

25

26

27

28

---

[106] *See supra* note 8–9.

1                                          Respectfully submitted,

2

3    Dated: March 28, 2022                  /s/ Roberto Anguizola

                                         Roberto Anguizola, IL Bar No. 6270874

4                                         Frances Kern, MN Bar No. 395233

5                                         Rebecca Plett, VA Bar No. 90988

                                         James Evans, VA Bar No. 83866

6                                         Federal Trade Commission

                                         600 Pennsylvania Ave., NW, CC-5201

7                                         Washington, DC 20580

                                         (202) 326-3284 / ranguizola@ftc.gov

8                                         (202) 326-2391 / fkern@ftc.gov

                                         (202) 326-3664 / rplett@ftc.gov

9                                         (202) 326-2026 / james.evans@ftc.gov

10                                       (202) 326-3395 (fax)

11                                       **Attorneys for Plaintiff**

12                                       **Federal Trade Commission**