Roberto Anguizola (IL Bar No. 6270874)
Frances Kern (MN Bar No. 395233)
Rebecca Plett (VA Bar No. 90988)
James Evans (VA Bar No. 83866)
Federal Trade Commission
600 Pennsylvania Ave., NW, Mailstop CC-5201
Washington, DC 20580
(202) 326-3284 / ranguizola@ftc.gov
(202) 326-2391 / fkern@ftc.gov
(202) 326-3664 / rplett@ftc.gov
(202) 326-2026 / james.evans@ftc.gov

Attorneys for Plaintiff
Federal Trade Commission

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| **Federal Trade Commission**, <br><br> Plaintiff, <br><br> v. <br><br> **Intuit Inc.**, <br><br> Defendant. | No. 5:22-cv-1973-EJD <br><br> Hearing: April 14, 2022, 1:30 pm <br><br> **Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction** |

**Please take notice** that on April 14, 2022, at 1:30 pm, pursuant to Federal Rule of Civil Procedure 65, Plaintiff, the Federal Trade Commission ("FTC"), will move this Court for a temporary restraining order ("TRO") and preliminary injunction ("PI") pursuant to Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b).

Plaintiff seeks Court intervention to immediately halt Defendant Intuit Inc.'s deceptive advertising of TurboTax, a commonly-used online tax preparation service that enables users to prepare and file their income tax returns. Intuit's advertising violates the FTC Act and should be put on hold to avoid victimizing consumers during the end of tax filing season, when a substantial number of taxpayers file their returns, and during the pendency of an administrative proceeding on the merits before the FTC. This motion is supported by Exhibits docketed as Dkt. No. 7-3 through 7-13.

**TABLE OF CONTENTS**

I.   Statement of Facts .................................................................................................2

     A.   Defendant Intuit ...................................................................................2

     B.   Intuit's Business Practices ....................................................................3

          1.   TurboTax's "Freemium" Version: TurboTax Free Edition ...........3

          2.   Intuit's Ads Misrepresent that Consumers Can File Their Taxes for
               Free Using TurboTax ..................................................................6

          3.   TurboTax's Home Page Contributes to the Net Impression of
               Intuit's "Free" Advertising Campaign by Misleading Consumers
               into Believing They Can File Their Taxes for Free Using TurboTax ........11

          4.   TurboTax's Products and Pricing Screen and "Hard Stops"
               Contribute to the Monetization of Intuit's "Free" Advertising
               Campaign by Inducing Consumers to Upgrade from Free to Paid
               Versions of TurboTax ...............................................................13

          5.   Intuit's Deception Harms Consumers and Competition ...........14

               a.   Pecuniary Harm for Consumers Eligible for Tax
                    Preparation Alternatives that Are Actually Free .............15

               b.   A Waste of Time and Privacy Intrusion for Ineligible
                    Consumers ...........................................................................17

               c.   Injury to Honest Market Participants ................................18

II.  Argument: Immediate Entry of a TRO and Subsequent Entry of a
     Preliminary Injunction Is Necessary to Protect Consumers ..........................18

     A.   The Evidence Shows that Plaintiff Is Likely to Succeed on the Merits of
          Count I (Deceptive Advertisements) ....................................................19

          1.   Intuit Has Repeatedly and Continuously Made the Alleged
               Representations Through Its Nationwide, Multi-Year "Free"
               TurboTax Advertising Campaign ...............................................20

          2.   Intuit's "Free" TurboTax Advertising Campaign Is Misleading ...............21

1

3.      Intuit's "Free" Claims Are Material ..........................................................22

B.      The Equities Favor Entry of a Temporary Restraining Order and
        Preliminary Injunction ........................................................................................23

C.      Any Purported Discontinuance of Illegal Conduct Is Insufficient to Avoid
        a TRO and Preliminary Injunction .......................................................................24

**III.    Conclusion ........................................................................................................................24**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2  **Cases**                                                                                   **Page(s)**

3  *Cal. Dental Ass'n v. FTC*, 526 U.S. 756 (1999) ..........................................................18

4  *FTC v. Affordable Media, LLC*, 179 F.3d 1228 (9th Cir. 1999)..............................19, 24

5  *FTC v. Commerce Planet, Inc.*, 878 F. Supp. 2d 1048 (C.D. Cal. 2012) ...............................22-23

6  *FTC v. Cyberspace.com LLC*, 453 F.3d 1196 (9th Cir. 2006).......................................20-22

7  *FTC v. Gill*, 265 F.3d 944 (9th Cir. 2001) ...............................................................21

8  *FTC v. Hardwire Interactive, Inc.*, 765 F. App'x 184 (9th Cir. 2019) ...........................23

9  *FTC v. Johnson*, 96 F. Supp. 3d 1110 (D. Nev. 2015)...................................................23

10 *FTC v. Pantron I Corp.*, 33 F.3d 1088 (9th Cir.1994)..................................................21

11 *FTC v. Sage Seminars, Inc.*, No. C95-2854, 1995 WL 798938 (N.D. Cal. Nov. 2, 1995) ...........24

12 *FTC v. Stefanchik*, 559 F.3d 924 (9th Cir. 2009) ...................................................20-21

13 *FTC v. Triangle Media Corp.*, No. 18-cv-1388, 2018 WL 6305675

14        (S.D. Cal. Dec. 3, 2018)........................................................................23

15 *FTC v. Willms*, No. 11-cv-828, 2011 WL 4103542 (W.D. Wash. Sept. 13, 2011) ........................23

16 *FTC v. Winsted Hosiery Co.*, 258 U.S. 483 (1922)........................................................18

17 *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344 (9th Cir. 1989)........................................19

18 *In re Encyclopedia Britannica, Inc.*, 87 F.T.C. 421 (1976)............................................22

19 *In re Synchronal Corp.*, No. 9251, 1991 WL 639972 (F.T.C. Oct. 28, 1991)..............................23

20

21 **Statutes and Rules**                                                                      **Page(s)**

22 15 U.S.C. § 45...............................................................................................19-20

23 15 U.S.C. § 53.................................................................................................19

24 16 C.F.R. § 251.1 .........................................................................................22-23

25

26 **Other Authorities**                                                                       **Page(s)**

27 *FTC Statement on Deception*, 103 F.T.C. 174 (1984) (*appended to Cliffdale Assocs., Inc.*,

28        103 F.T.C. 110 (1984)) ...............................................................................18, 21

1    **MEMORANDUM IN SUPPORT OF MOTION FOR TRO AND PI**

2    Much of Defendant Intuit's advertising for TurboTax, its marquee consumer tax service,

3    conveys the message that consumers can file their taxes for free using TurboTax, even going so

4    far as to air commercials in which almost every word spoken is the word "free." In truth,

5    TurboTax is only free for some users, based on the tax forms they need. TurboTax is not free for

6    taxpayers who do not have a "simple tax return," as defined by Intuit—a definition not met by

7    around two-thirds of taxpayers in recent years.[1] Intuit tells consumers ineligible to use TurboTax

8    for free, after they have invested time and effort gathering and inputting into TurboTax their

9    sensitive personal and financial information to prepare their tax returns, that they cannot continue

10   for free. Instead, Intuit informs these consumers they will need to upgrade and pay to complete

11   and file their taxes. Because of this bait-and-switch, Intuit's advertisements are deceptive.

12   Ads for TurboTax are ubiquitous—especially as we near the end of the income tax return

13   filing season. The net impression of Intuit's ads is hard to miss, principally because it is

14   practically the only word spoken: free—that is, consumers can file their taxes for free using

15   TurboTax. But because most consumers can't file their taxes for free using TurboTax,[2] Intuit's

16   ads are a deceptive door-opener. They get consumers to come to TurboTax.com seeking to file

17   their taxes for free, but many of them eventually find out—after investing time and effort

18   gathering and inputting into TurboTax their sensitive personal and financial information—that

19   they'll have to pay Intuit up to $119 to file their taxes.[3]

20   On television alone, Intuit aired ads in the "Free, Free, Free, Free" campaign more than

21   11,054 times across at least 499 television networks from November 1, 2021 to March 20, 2022.[4]

22

---

23   [1] *See infra* note 62.

24   [2] *See infra* note 62.

25   [3] Self-employed is currently the most expensive product, at $119. *See*

26   turbotax.intuit.com/personal-taxes/online/; *see also, e.g.*, GX 301 (Shiller Dec.), ¶ 54 & GX 240

27   (it takes nearly 15 minutes and pages of data entry to reach a hard stop).

28   [4] GX 301 (Shiller Dec.), ¶ 18–31.

1  They were also available on Intuit's YouTube channel as of March 28, 2022, where they had
2  been viewed millions of times.[5]
3      On practically the eve of the FTC instituting legal proceedings against it, Intuit promised
4  to pull these ads from television. But exactly when is unclear—and they have aired on widely-
5  viewed current programming. These ads ███████████████████████████████
6  ████████████ include deceptive "free" claims appearing on a variety of mediums including
7  social media, radio, blogs, and the TurboTax website. And Intuit has made no effort to correct the
8  misperceptions and confusion that these ads, which have aired in heavy rotation for years, caused
9  in the marketplace.

10  I.  **Statement of Facts**

11      A.  **Defendant Intuit**

12      Defendant Intuit Inc. is a Delaware corporation with its principal place of business in
13  Mountain View, California. Intuit is publicly traded with annual revenues of $6.8 billion in 2019,
14  $7.7 billion in 2020, and $9.6 billion in 2021.[6]

15      Intuit advertises, markets, promotes, distributes, and sells TurboTax, a commonly-used
16  online tax preparation service that enables users to prepare and file their income tax returns, to
17  consumers throughout the United States. (As used in this Motion and the Complaint, "TurboTax"
18  only refers to online products and services.) Intuit's TurboTax dominates the market for online
19  tax preparation services. In May 2021, TurboTax's share of sales in the United States was 73%, 3
20  percentage points higher than in July 2020 and 10 percentage points higher than in April 2019.[7]

21      Intuit's income tax preparation products and services, including TurboTax, "have a
22  significant and distinct seasonal pattern as sales and revenue from [them] are typically
23  concentrated in the period from November through April."[8] ████████████████████

24

25  [5] GX 301 (Shiller Dec.), ¶¶ 15–16, & 21 & GX 200, 206.
26  [6] GX 301 (Shiller Dec.), ¶¶ 7-9 & GX 288 (Intuit 2021 Annual Report) at Cover Page, 5, 36, & 39.
27  [7] GX 301 (Shiller Dec.), ¶ 10 & GX 289.
28  [8] GX 301 (Shiller Dec.), ¶ 8 & GX 288 (Intuit 2021 Annual Report) at 10.

1 ██████████████████████████████████████████████████

2 ██████████████████████████████ [9] Historically, 26% of annual sales for tax

3 preparation services occur during the week of or week before Tax Day, the deadline for most

4 individuals to file their income tax returns.[10] In 2021, 21% of sales year-to-date (as of the week

5 of May 17) occurred the week of Tax Day and the week before (Tax Day was delayed due to a

6 Covid-related tax deadline extension).[11]

7       **B.**     **Intuit's Business Practices**

8                **1.**     **TurboTax's "Freemium" Version: TurboTax Free Edition**

9 ████████████████████████████████████████████████

10 █████████████ [12] ████████████████████████ involves, in part, growing Intuit's

11 customer base by offering free services to consumers ████████████████████

12

—————————————

13   [9] *See, e.g.,* ███████████████████████████████████████

14 ████████████████████████████████████████████████████

15 ██████████████████████████████

16   [10] GX 289; *see also*, IRS Press Release, irs.gov/newsroom/2022-tax-filing-season-begins-jan-

17 24-irs-outlines-refund-timing-and-what-to-expect-in-advance-of-april-18-tax-deadline.

18   [11] GX 289.

19   [12] *See, e.g.,* ████████████████████████████████

20 ████████████████████████████████████████████

21 ████████████████████████████████████████████

22 ████████████████████████████████████████████

23 ██████████████████████████████████████████████

24 ██████████████████████████████████████████████

25 ██████████████████████████████████████████

26 ████████████████████████████████████████████

27 ████████████████████████████████████████████████

28 ██████████████████████████████████

1   ███████████████ [13] ██████████████████ also involves persuading consumers to upgrade

2   from free to paid versions of TurboTax. [14] ████████████████ further involves "brand

3   loyalty," or retention of consumers who previously filed their taxes for free in the "freemium"

4   version of TurboTax returning to TurboTax in subsequent years when they are no longer eligible

5   for the "freemium" version, and paying Intuit for a paid version of TurboTax. [15] Since at least TY

6   2017, Intuit has called the "freemium" version of TurboTax the "TurboTax Free Edition." [16] In

7   TY 2016, Intuit called the "freemium" version of TurboTax "Federal Free Edition." [17]

8       The "freemium" version of TurboTax is available only to consumers with "simple" tax

9

10   [13] *See* ████████████████████████████████

11   ████████████████████████████████████████

12   ███████████████████████████████████████

13   ██████████████████████████████████

14   ████████████████████████████████

15   [14] *See, e.g.,* ███████████████████████████

16   ██████████████████████████████████

17   ██████████████.

18   [15] *See* █████████████████████████████

19   ████████████████████████████████████████

20   ███████████████████████████████████

21   ███████████████████████████████████

22   ████████████████████████████████

23   ██████████████████████████████████████

24   ██████████████████████████████████

25   ████████████████████████████████

26   ███████████████████████████████████.

27   [16] *See* █████████████████████; GX 301 (Shiller Dec.), ¶ 11.

28   [17] *See* ██████████████.

returns, as defined by Intuit; other consumers are required to upgrade to paid versions of TurboTax to file their taxes.[18] In 2017 and 2018, when consumers filed tax returns for Tax Year ("TY") 2016 and 2017 (*e.g.* taxes filed in 2017 for income earned in 2016), Intuit defined a "simple" tax return as a return that could be filed using a 1040A or 1040EZ tax form.[19] In 2019, when consumers filed tax returns for TY 2018, Intuit defined a "simple" tax return as a return that could be filed on a Form 1040, with no attached schedules.[20] In 2021, when consumers filed tax returns for TY 2020, Intuit defined a "simple" tax return as a return that could be filed on a Form 1040, with no attached schedules, except to claim unemployment income.[21] Intuit currently defines "simple" tax return as a return that can be filed on a Form 1040 with limited attached schedules to cover distinct tax situations, including student loan interest paid.[22] Consumers who receive income reported through certain types of IRS Form 1099 are not eligible for the "freemium" version of TurboTax, regardless of their income.[23] This includes consumers who

---

[18] *See* GX 301 (Shiller Dec.), ¶¶ 32-33, 35-36, 46; ███████████████████████████

███████████

[19] *See* ███████████████████████████████████████████████.

[20] *See* █████████████████████████████████████████ GX 301 (Shiller Dec.), ¶ 40 (TY18); ███████████████████████████

████████████████████████████

[21] GX 301 (Shiller Dec.), ¶ 61.

[22] *See* GX 301 (Shiller Dec.), ¶ 64.

[23] *See* █████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████

█████████████████████████████████████████████

██████████████ *see also, e.g.*, GX 301 (Shiller Dec.) ¶ 46 & GX 220-21 (TY 18), 238-29

receive independent contractor or small business income, such as consumers working in the gig economy. From TY 2018 to at least TY 2019, consumers who claimed student loan interest deductions were not eligible for the "freemium" version of TurboTax, regardless of their income.[24] In short, determining what constitutes a "simple" tax return is anything but simple.

### 2.     Intuit's Ads Misrepresent that Consumers Can File Their Taxes for Free Using TurboTax

Despite these limitations and the fact that millions of consumers are not eligible for the "freemium" version of TurboTax, Intuit has promoted TurboTax through an extensive and ongoing advertising campaign that represents that consumers can file their taxes for free using TurboTax.[25] Since at least 2016, Intuit has employed these deceptive door-opener ads, including via television, radio, YouTube, and social media, to promote the "freemium" version of TurboTax.[26] ███████████████████████████████████████

_____

(TY19), 260-61 (TY20), 278-79 (TY21).

[24] *See* ███████████████████████████████████████ *see also, e.g.*, GX 301 (Shiller Dec.), ¶ 46 & GX 222-23 (TY18), 240-41 (TY19), 262-63 (TY20).

[25] ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████; *see also infra* note 62.

[26] ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Pl.'s Emergency Mot. for TRO & PI
No. 5:22-cv-1973-EJD

1  ████████████████,[27] which were broadcast in heavy rotation on television and online.

2  These ads have included Intuit's "Absolute Zero" and "Free, Free, Free, Free" campaigns.[28]

3       Intuit's "Absolute Zero" campaign informed consumers "at least your taxes are free."[29]

4  For the Absolute Zero campaign, Intuit's goal was for consumers to believe the offering was

5  truly free, and Intuit included the words "Free Guaranteed" in its Absolute Zero marketing to

6  bolster and emphasize the claim that the offer was truly free.[30]

7       Intuit also continues to run a deceptive door-opener ad campaign it calls "Free, Free,

8  Free, Free" in which "free" is essentially the only word spoken by the actors in the commercials,

9  until the voice over at the end of the advertisement.[31] Intuit has used at least six different

10  advertisements in this campaign, including an advertisement in which "free" was a word in a

11  spelling bee, another in which a court stenographer recorded a legal proceeding in which "free"

12  

13  [27] ████████████████████████████████████

14  ████████████████████████████████

15  [28] *See* █████████████████████████████████

16  ████████████████████████████████████

17  ████████████████████████████████████

18  ████████████████████████████████

19  [29] *See, e.g.,* ██████████████████████

20  [30] *See* ███████████████████████████████

21  ████████████████████████████████████

22  ████████████████████████████████████

23  █████████████

24  [31] *See* ████████████████████████████████

25  ████████████████████████ *see also* GX 301 (Shiller Dec.),

26  ¶¶ 14, 16-18, 21-23, 27-29 & GX 200, 202-203 ("Auctioneer" ad), 206, 208-209 ("Dance

27  Workout" ad), GX 204-05 ("Dog Show" ad). Regarding the ongoing nature of the campaign, see

28  GX 301 (Shiller Dec.), ¶¶ 19-20, 25-26, 30-31.

Pl.'s Emergency Mot. for TRO & PI
No. 5:22-cv-1973-EJD

1   was the only word used, and another in which an exercise class instructor chants "free" while

2   leading a group workout.[32] In several ads, the word "free" is repeated over 40 times in a 30-

3   second ad.[33] Commercials in the "Free, Free, Free, Free" campaign have informed consumers

4   that "TurboTax Free is free, free free free free."[34] From November 1, 2021, to March 20, 2022,

5   Intuit aired ads in the "Free, Free, Free, Free" campaign more than 11,054 times across at least

6   499 television networks.[35] This included televisions networks in every state in the Union.[36]

7          Many of Intuit's ads contain a fine print disclaimer at the end of the commercial

8   informing consumers that the offer is limited to consumers with "simple tax returns" or "simple

9   U.S. returns only."[37] The disclaimers are inadequate to cure the misrepresentation that consumers

10  can file their taxes for free using TurboTax, when in truth, in numerous instances Intuit does not

11  permit consumers to file their taxes for free using TurboTax. The disclaimers: a) Are

12  disproportionately small compared to the prominent text emphasizing that the service is free;

13  b) Appear for just a few seconds, when the commercials aired in 15-, 30-, and 60-second

14  versions; and c) Are in writing only, often in font color similar to the background color, and are

15  not read by a voiceover.[38]

16         A screen displayed to consumers during commercials aired as part of the "Free, Free,

17  Free, Free" campaign included a fine print disclaimer that the free offer was available only to

18  consumers with "simple U.S. returns."[39] As discussed above, what "simple" means can be a

19

20  [32] *See* ███████████████████████████; GX 301 (Shiller Dec.), ¶ 14.

21  [33] *See, e.g.,* ██████

22  [34]  GX 301 (Shiller Dec.), ¶¶ 16-18, 21-22, 24, 27-29 & GX 200, 202-03 ("Auctioneer" ad),

23  206, 208-09 ("Dance Workout" ad), 204-205 ("Dog Show" ad).

24  [35] GX 301 (Shiller Dec.), ¶¶ 19-20, 25-26, 30-31.

25  [36] GX 301 (Shiller Dec.), ¶¶ 20, 26, 31.

26  [37] GX 301 (Shiller Dec.), ¶¶ 32-36.

27  [38] GX 301 (Shiller Dec.), ¶¶ 32-34; ██████████████████████.

28  [39] GX 301 (Shiller Dec.), ¶ 32.

Pl.'s Emergency Mot. for TRO & PI
No. 5:22-cv-1973-EJD

matter of interpretation, and Intuit's definition of "simple" has changed over time. The disclaimer also appeared below a much more prominent promotion: "**turbotax**free Free, free free free." While this screen was shown to consumers during commercials, in at least some of Intuit's commercials, an announcer said: "That's right, TurboTax Free is free. Free, free free free."[40] The announcer did not read the fine print disclaimer that it is for the "Free Edition product only. For simple U.S. returns."[41] Intuit has never offered a product or service named only "TurboTax Free"—those words have always been a component of longer names such as "TurboTax Free Edition" (for the "freemium" version of TurboTax).[42]

Similar ads making "free" ads are still running, which include a similar fine print disclaimer:[43] The screen is dominated by "**turbotax** Free Edition" in large print in the middle of the screen. While the screen is shown to consumers briefly at the end of the "Free, Free, Free, Free" commercials, an announcer says: "That's right, TurboTax Free Edition is free. See details at turbotax.com."[44] The announcer does not read the fine print disclaimer stating: "TurboTax Free Edition is for simple U.S. returns only."[45]

Given this deceptive door-opener advertising, reasonable consumers may believe that the TurboTax products and services Intuit advertises as free are free for them—that they can file their taxes for free using TurboTax. In addition, at least one of TurboTax's competitors, Cash App Taxes (formerly Credit Karma Tax), has offered a truly free online tax preparation and filing service to all consumers for five years.[46] Further, online products and services in many industries are routinely offered to consumers completely free of charge, leading consumers to reasonably

---

[40] *Id.*; *see also* ██████████████████████████.

[41] GX 301 (Shiller Dec.), ¶ 32.

[42] *See* █████████████████████████.

[43] GX 301 (Shiller Dec.), ¶ 33.

[44] *Id.*

[45] GX 301 (Shiller Dec.), ¶ 34.

[46] *See* Cash App Taxes, cash.app/taxes (last visited Mar. 28, 2022).

Pl.'s Emergency Mot. for TRO & PI
No. 5:22-cv-1973-EJD

1    conclude that free means free for Intuit's online tax preparation products.[47]

2          Intuit's false representation that consumers can file their taxes for free using TurboTax,

3    without adequately disclosing the limitations of its free offer, has induced and is inducing

4    consumers to begin using TurboTax, and after discovering that they are not eligible for the

5    "freemium" version of TurboTax, to pay for a paid version of TurboTax.[48]

6          In fact, a survey recently conducted by Yale Professor of Marketing Nathan Novemsky,

7    an expert in the psychology of judgment and decision-making, confirms that consumers are

8    misled by Intuit's "free" advertising campaign. According to Professor Novemsky's survey, a

9    substantial portion of the taxpayers who are ineligible to use the "freemium" version of

10   TurboTax (TurboTax Free Edition) under Intuit's criteria have the misimpression that they can

11   file their income taxes for free using TurboTax.[49] And a vast majority of these taxpayers identify

12   Intuit's TurboTax advertisements and its website as playing a role in forming their

13   misimpression.[50] Moreover, Professor Novemsky opines that Intuit's "simple returns" disclaimer

14   is ineffective.[51] According to his survey, a significant portion of the taxpayers who are not

15   eligible to use the "freemium" version of TurboTax under Intuit's criteria (and hence, do not have

16   a "simple U.S. return" as Intuit defines the term) mistakenly believe that their returns are

17   "simple" and therefore have the misimpression their returns meet Intuit's definition of a "simple

---

20   [47] GX 302 (Novemsky Dec.), ¶ 27 ("Consumers have experience with many free online

21   services …. This breadth and frequency of experience with free online services means that

22   consumers are open to such offers from TurboTax.").

23   [48] *See, e.g.*, ████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████████.

25   [49] GX 302 (Novemsky Dec.) ¶ 4.1.

26   [50] *See* GX 302 (Novemsky Dec.) ¶ ¶ 25, 26 & Table 1.

27   [51] GX 302 (Novemsky Dec.) ¶ 31 (the "simple returns" disclaimer is "is not sufficient to undo

28   consumers' misimpression that they can file for free with TurboTax").

1    U.S. return."[52] These survey results are consistent with Professor's Novemsky's assessment of

2    consumer understanding of "free" claims.[53] According to Professor Novemsky, consumers are

3    likely to be open to Intuit's "free" claims based on experiences they have with a plethora of free

4    services available to consumers online.[54]

      **3.      TurboTax's Home Page Contributes to the Net Impression of Intuit's "Free" Advertising Campaign by Misleading Consumers into Believing They Can File Their Taxes for Free Using TurboTax**

8          When consumers who see Intuit's advertisements visit the TurboTax website, the

9    website's home page does not disclose adequately to consumers the limitations on eligibility for

10   the "freemium" version of TurboTax. For example, for TY 2018, the TurboTax home page

11   contained a screen that mimicked the "free, free free free" ad campaign:[55] The screen, shown to

12   consumers filing tax returns for TY 2018, failed to disclose adequately the limitations on

13   eligibility for at least three reasons: a) First, the limitations on eligibility were preceded by the

14   words "FREE, guaranteed." Intuit employees responsible for overseeing the marketing and

15   marketing strategy for the "freemium" version of TurboTax included "guaranteed" ▮▮▮▮▮▮▮▮

16   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[56] b) Second, the disclosure language stated that

17   consumers could file their "simple tax returns for FREE," but no guidance was given about the

18   meaning of "simple tax return" on that screen. In a significant example, Intuit would not have

19   considered consumers receiving income reported on certain types of IRS Form 1099 as having a

20   "simple tax return." This includes consumers receiving independent contractor or small business

21   income, such as consumers working in the gig economy by, for example, providing rideshare

---

[52] GX 302 (Novemsky Dec.) ¶¶ 29 & Table 3, 30 (showing that, of consumers who have not used TurboTax in the last three years, 55% think their tax return is "simple" as Intuit defines it).

[53] GX 302 (Novemsky Dec.) ¶ 27.

[54] *Id.*

[55] GX 301 (Shiller Dec.), ¶¶ 39-40.

[56] *See supra* note 30.

Pl.'s Emergency Mot. for TRO & PI
No. 5:22-cv-1973-EJD

1    services or delivering groceries.[57] c) Third, the eligibility requirement disclosures were hidden

2    behind a hyperlink over the words "See why it's free." Consumers had to click on the hyperlink

3    to trigger a pop up explaining the limitations.

4           The homepage featured an orange button saying "File for $0," and consumers who

5    clicked on it would be brought to a login screen and then start an online, automated "interview"

6    to begin entering information to file their taxes.[58] Consumers who were not eligible for the

7    "freemium" version of TurboTax would not learn they were ineligible until they had already

8    invested significant time and effort creating an account and inputting their sensitive personal and

9    financial information into TurboTax.[59]

10          Since TY 2020, Intuit has continued to employ a customer interview model in which

11   consumers who are not eligible for the "freemium" version of TurboTax do not learn they are

12   ineligible until they have already invested significant time and effort creating an account and

13   inputting their sensitive personal and financial information into TurboTax.[60]

14          The screen Intuit currently uses on its website, for TY 2021,[61] once again emphasizes

15   "FREE," "$0," and "File for $0" at the top of the page, when in numerous instances Intuit does

16   not permit consumers to file their taxes for free using TurboTax.[62] While "Simple tax returns

17

18          [57] *See supra* note 23.

19          [58] GX 301 (Shiller Dec.), ¶¶ 48-59.

20          [59] GX 301 (Shiller Dec.), ¶ 59.

21          [60] GX 301 (Shiller Dec.), ¶¶ 60–63; *see also, e.g., id.* ¶ 54 & GX 240 (it takes nearly 15

22   minutes and pages of data entry to reach a hard stop).

23          [61] GX 301 (Shiller Dec.), ¶ 65.

24          [62] According to IRS data for TY 2019, taxpayers filed 57,671,912 "[r]eturns that filed Form

25   1040 with no Schedules 1-6 or Schedule A attached," out of 157,682,637 total returns filed. *See*

26   irs.gov/pub/irs-soi/20inweek53.xls (these data are explained at irs.gov/statistics/filing-season-

27   statistics). Thus, taxpayers filed 100,010,725 returns with Schedules 1-6 or Schedule A attached,

28   which is 63.43% of total returns. TurboTax's "freemium" product does not support these

1   only" is hyperlinked to more detailed terms and conditions, the term "simple tax returns" is not

2   understood by many consumers, and consumers who assume they have a "simple tax return" are

3   not likely to click to read more.[63]

4          Thus, Intuit continues to bombard consumers with the message that they can file their

5   taxes for "free." Intuit baits consumers with deceptive ads and then compound the deception with

6   more false claims and buried disclosures.

7          **4.      TurboTax's "Hard Stops" Contribute to the Monetization of Intuit's**

8          **"Free" Advertising Campaign by Inducing Consumers to Upgrade**

9          **from Free to Paid Versions of TurboTax**

10          Beyond the home page, additional features on the TurboTax website induce consumers to

11   use a paid version of TurboTax instead of the "freemium" version.

12          When consumers use the "freemium" version of TurboTax, it first asks them a series of

13   general questions on successive webpages about their financial situation.[64] These questions

14   enable Intuit to determine whether consumers are eligible for the "freemium" version of

15   TurboTax and include, among other things, whether the consumer paid student loan interest or

16   was self-employed.[65] Next, consumers are prompted to input their income by category.[66] When

17   consumers indicate that they need to report income on certain types of IRS Form 1099 (which

18   could be because entities that paid them classified them as independent contractors, such as

19   consumers working in the gig economy by, for example, providing rideshare services or

20   delivering groceries), the "freemium" version of TurboTax displays a screen that Intuit

21

22   ────────────────

      schedules, so for TY 2019, almost two-thirds of taxpayers were ineligible to use it. The same

23   dataset for TY 2018 shows that 69.54% of tax returns could not have been filed through

24   TurboTax's "freemium" product that year. *See* irs.gov/pub/irs-soi/19inweek47expanded.xls.

25   [63] GX 302 (Novemsky Dec.), ¶¶ 30-34.

26   [64] GX 301 (Shiller Dec.) ¶ 68; ████████████████████████████████████████████.

27   [65] ██████████████████████████████████████.

28   [66] GX 301 (Shiller Dec.), ¶¶ 67-68.

Pl.'s Emergency Mot. for TRO & PI
No. 5:22-cv-1973-EJD

employees call a "Hard Stop," informing them that they cannot proceed for free.[67] For example, a current Hard Stop tells consumers: "To accurately report this income, you'll need to upgrade."[68] The Hard Stop screen tell consumers they must upgrade to accurately file their taxes, and that they will have to pay up to $59.99 for TurboTax Deluxe and up to $119 for TurboTax Self-Employed at full price (though discounts may be available).[69]

Thus, Intuit's deceptive door-opener ads touting "Free, Free, Free, Free" bring consumers to the TurboTax website representing that consumers can file their taxes for free using TurboTax, but once there, many consumers encounter a Hard Stop that inform them that they cannot complete and file their taxes for free. In the case of the Hard Stop screens, this confrontation comes after consumers have already created a TurboTax account and input highly sensitive personal and financial information into Intuit's user interface—sometimes after investing substantial time to do so.[70] Once consumers pay Intuit to complete and file their taxes, the bait-and-switch is complete until the next tax season, when Intuit uses the information it collects from consumers to market additional products and services to consumers.

### 5.      Intuit's Deception Harms Consumers and Competition

Intuit's deception harms consumers and competition in a variety of ways including: (1) pecuniary injury suffered by consumers who were eligible for tax preparation alternatives that are actually free; (2) wasted time and effort; (3) privacy harm associated with entering sensitive personal and financial information into TurboTax under the false impression that they would be able to file for free; and (4) injury to honest participants in the tax preparation market.

In considering the harms to consumers, it's useful to keep in mind the context: Intuit's ads and website reach consumers at a moment of vulnerability—tax time. ███████████

---

[67] *Id.*; *see, e.g.*, GX 157 (Smith Tr.) 111:24-112:21; *see also supra* note 23.

[68] GX 301 (Shiller Dec.), ¶ 69.

[69] *Id.*; ███████████████████.

[70] *See, e.g.*, GX 301 (Shiller Dec.), ¶ 54 & GX 240 (it takes nearly 15 minutes and pages of data entry to reach the hard stop related to student loan interest deductions).

1 ███████████████████████████████████████████████

2 ████████████████████████████████████████████████

3 ███████████████████████████████████████████████

4 ████████████████████████████ [71] It's no surprise that consumers experience ████

5 ███████████████████ surrounding their annual income tax return filings—there's a fixed

6 government deadline, there are legal consequences for not paying taxes correctly, and taxes are

7 complicated. Not to mention the fact that, for many, their tax refund is several times greater than

8 their paycheck.[72] Additionally, millions of Americans procrastinate and file their tax returns the

9 last week before Tax Day.[73] And many of those consumers are not even purchasing tax

10 preparation service until the end of the tax season.[74] As a result, consumers making purchasing

11 decisions for tax preparation services are likely to feel stressed and rushed.

        a.    **Pecuniary Harm for Consumers Eligible for Tax Preparation Alternatives that Are Actually Free**

14 Many consumers suffer pecuniary harm as a result of Intuit's deceptive "free" advertising

15 campaign for TurboTax. ████████████████████████████████████

---

[71] ████████████████████ .

[72] *See* JPMorgan Chase Institute, "Tax Time: How Families Manage Tax Refunds and Payments" (2019), at 12 ("Refund families receive an average of 5.7 weeks' income in their tax refund."), *available at* jpmorganchase.com/content/dam/jpmc/jpmorgan-chase-and-co/institute/pdf/institute-tax-time-report-full.pdf.

[73] Carmen Reinicke, *A third of Americans file taxes at the last minute. Why that might be a bad idea*, CNBC (Apr. 28, 2021), cnbc.com/2021/04/28/one-third-of-americans-file-taxes-last-minute-it-might-be-a-bad-idea.html (last visited Mar. 27, 2022) ("As many as 33% of Americans procrastinate doing their taxes and wait until the last minute.").

[74] GX 289, at 1; *see also* IRS Press Release, irs.gov/newsroom/2022-tax-filing-season-begins-jan-24-irs-outlines-refund-timing-and-what-to-expect-in-advance-of-april-18-tax-deadline.

██████████████████████████████████████████.[75] It's possible that some of these consumers incorrectly believe that if they are ineligible for the "freemium" version of TurboTax, they must be ineligible for other free tax preparation alternatives. Until 2021, Intuit itself had a free alternative that many consumers could have used to prepare their taxes at no cost through the version of TurboTax that was part of the IRS's Free File Program, a public-private partnership between, among others, Intuit and the Internal Revenue Service.[76] ████████████

███████████████████████████████████████████████████████

███████████████████████████████████████.[77] ██████████████

████████████████████████████████████████████████████

████████████████████████████████████.[78]

While Intuit left the Free File Program following the conclusion of the 2021 tax season, the Free File Program continues to offer online tax preparation at no cost using industry-leading tax services.[79] Seventy percent of American taxpayers (about 100 million people) are eligible for the

---

[75] ███████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

████████████████████.

[76] Intuit Blog, Accelerating Technology Innovation to Better Help Consumers Solve Their Most Pressing Financial Problems (Jul. 15, 2021), *available at* intuit.com/blog/news-social/accelerating-technology-innovation-to-better-help-consumers-solve-their-most-pressing-financial-problems/ (last visited Mar. 28, 2022); ██████████████████████

████████████████████████████████████.

[77] █████████████████████████████████.

[78] █████████████████████████████████.

[79] Intuit Blog, Accelerating Technology Innovation to Better Help Consumers Solve Their Most Pressing Financial Problems (Jul. 15, 2021), *available at*: intuit.com/blog/news-

1    IRS's Free File Program.[80] Ninety-seven percent of Free File users would recommend the

2    program to others based on a 2021 survey.[81]

3    ██████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████

5    ██████.[82]

6                    **b.        Time Waste and Privacy Intrusion for Ineligible Consumers**

7           Other consumers spend considerable time and energy entering their sensitive personal

8    and financial information into TurboTax, only to learn that it is not "free" for them, ████████

9    ████████████████████████.[83] For these consumers, the injury they suffer because of

10   Intuit's deception is real, but admittedly is intangible and difficult to quantify. This includes

11   wasted time and effort associated with navigating to the TurboTax website and entering enough

12

13   ─────────────────
     social/accelerating-technology-innovation-to-better-help-consumers-solve-their-most-pressing-

14   financial-problems/ (last visited Mar. 28, 2022); IRS, IRS Free File: Do your Taxes for Free

15   irs.gov/filing/free-file-do-your-federal-taxes-for-free (last visited Mar. 28, 2022).

16        [80] Free File Alliance, available at freefilealliance.org/ (last visited Mar. 28, 2022); Eighth

17   Memorandum of Understanding on Service Standards and Disputes Between the Internal

18   Revenue Service and Free File, Incorporated (Oct. 31, 2018), *available at* irs.gov/pub/irs-

19   utl/Eight%20Free%20File%20MOU.pdf.

20        [81] Free File Alliance, *available at* freefilealliance.org/ (last visited Mar. 28, 2022).

21   [82] ████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████████

25   ██████████████████████.

26   [83] *See, e.g.* ██████████████████████████████████████████████

27   ████████████████████████████████████████████████████████

28   ██████████.

information to learn that they are not eligible to file for free using TurboTax. They also suffer a
privacy harm in that they provide Intuit with sensitive personal and financial information they
would not have entered if they had known that TurboTax was not "free" for them.[84] Many of
these consumers enter the Intuit ecosystem based on the express, indeed repeated, promise of
receiving free tax preparation, but may end up opening themselves up to advertising and
unwanted communications for other services, promotions or other services by Intuit and its
subsidiaries and affiliates.[85]

### c.      Injury to Honest Market Participants

Finally, Intuit's deception harms honest participants in the tax preparation services
industry. Where, as here, a deceptive ad campaign draws attention to a product or service, it by
necessity lures consumers away from honest competitors.[86] The fact this harm is difficult to
quantify does not make it any less real.

## II.      Argument: A TRO and Preliminary Injunction Are Necessary to Protect Consumers

In light of Intuit's deceptive door-opener advertising campaign, Plaintiff seeks a TRO and

---

[84] GX 301 (Shiller Dec.), ¶ 54 & GX 240 (video showing that it takes nearly quarter of an hour
and pages of data entry to reach the hard stop related to student loan interest deductions); █████
███████████████████████████████████████████████████████████████████████████████████████
██████████████████████████ .

[85] ████████████████ ; GX 301 (Shiller Dec), ¶ 50 (consumers must agree to Intuit's Global
Privacy Statement); *id.* ¶ 54 & GX 240 (video) (consumers are asked for consent for Intuit to use
tax filing information for purposes other than tax filling), *id.* ¶ 51 & GX 285 (TY 2021 Global
Privacy Statement) at 2 (Intuit uses consumer data to "[e]valuate your eligibility for financial or
other marketing offers, products and services"), *id.* ¶ 52 & GX 286 (TY 2021 TurboTax Login
Terms), at 1, *id.* ¶ 57 & GX 287 (TY 2021 consent page).

[86] *FTC Statement on Deception*, 103 F.T.C. 110, 174 & n.58 (1984) (*appended to Cliffdale
Assocs., Inc.*, 103 F.T.C. 110 (1984)) ("Deception Policy Statement"); *Cal. Dental Ass'n v. FTC*,
526 U.S. 756, 771, n.9 (1999); *FTC v. Winsted Hosiery Co.*, 258 U.S. 483, 493 (1922).

a preliminary injunction that enjoin Intuit from misrepresenting that consumers can file their taxes for free using TurboTax. Immediate entry of a TRO is necessary to halt Intuit's ongoing deception as we enter the peak of the tax filing season and millions of American taxpayers prepare to meet the April 18 tax deadline. As set forth below, and supported by the Plaintiff's seven volumes of evidence, there is ample basis for the entry of a TRO and a preliminary injunction against Intuit.

Intuit's deceptive "free" advertising campaign violates Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Where, as here, a defendant has engaged in deception, Section 13(b) of the FTC Act authorizes the Commission to seek, and this Court to issue, preliminary injunctive relief to prevent ongoing deception until the Commission can adjudicate the lawfulness of the conduct in an administrative proceeding. 15 U.S.C. § 53(b).

In determining whether to grant preliminary relief under Section 13(b), the Court must consider two factors: (1) the FTC's likelihood of ultimate success on the merits, and (2) whether the public equities outweigh any private equities. *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1233 (9th Cir. 1999). Unlike private litigants, the FTC does not need to prove irreparable injury, *Affordable Media*, 179 F.3d at 1233, which is presumed in a statutory enforcement action, *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989). Nor must the FTC prove harm to the public interest, which is also presumed. *Id.* at 346. When weighing the equities, the public interest should receive greater weight than private interests. *Id.* at 347. As set forth in this memorandum, Plaintiff has amply demonstrated that it will ultimately succeed on the merits of its claim that Intuit has violated the FTC Act and that the equities weigh heavily in favor of the requested preliminary relief.

### A. The Evidence Shows that Plaintiff Is Likely to Succeed on the Merits of Count I (Deceptive Advertisements)

The evidence shows that Plaintiff is likely to succeed on the merits of Count I, which alleges that Intuit is engaged in deception by misrepresenting that consumers can file their taxes for free using TurboTax when, in numerous instances, Intuit does not permit consumers to file their taxes for free using TurboTax, in violation of Section 5(a) of the FTC Act.

1    The FTC Act prohibits the making of false claims like the ones made by Intuit in its

2 "free" advertising campaign for the "freemium" version of TurboTax. "Deceptive acts or

3 practices in or affecting commerce" are unlawful under section 5(a) of the FTC Act. 15 U.S.C.

4 § 45(a). To establish that a defendant has engaged in a deceptive act or practice under Section

5 5(a) of the FTC Act, the FTC must show: (1) the defendant made the alleged representation,

6 omission, or practice; (2) the representations, omission, or practice was likely to mislead

7 consumers acting reasonably under the circumstances; and (3) the representation, omission, or

8 practice is material. *FTC v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009).

9        **1.    Intuit Has Repeatedly and Continuously Made the Alleged**

10            **Representations Through Its Nationwide, Multi-Year "Free"**

11            **TurboTax Advertising Campaign**

12    There is no question that Intuit made the representations alleged in the Complaint. As

13 more fully described above in Section I.B.2, Intuit has repeatedly and continuously conveyed the

14 message that TurboTax is free through a long-running and widely disseminated multi-media

15 advertising campaign that includes Internet advertising and social media, radio, and television

16 ads. Intuit fails to adequately disclose that only some consumers were eligible for the

17 "freemium" version of TurboTax. Intuit has reached tens—if not hundreds—of millions of

18 consumers throughout the United States with its ongoing "free" TurboTax advertising

19 campaign.[87]

20    "Deception may be found based on the 'net impression' created by a representation."

21 *Stefanchik*, 559 F.3d at 928 (quoting *FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1200 (9th Cir.

22 2006)). The net impression of the representation in Intuit's "free" ads is clear, in no small part

23 because the company repeats the key word so many times. These are not ads that require a

24 complicated parsing to decipher. There is no need to read between the lines, because the lines

25 contain the likes of "freeeeeeeee," and "free, and free, and free, and free, and free." Intuit's

26 message is comically obvious—and indeed the comedy is part of Intuit's appeal to consumers

27

28    ───────────────
[87] GX 301 (Shiller Dec.), ¶¶ 18-19, 24-25, 29-30 (showing television ad airing information).

1  through these ads. They are catchy, they are funny, and they are omnipresent during tax season.

2  They are also deceptive.

3       A voiceover saying "See details at TurboTax.com" and a disclaimer in small, faint print at

4  the bottom of the screen referencing "simple U.S. returns," which appears for just a few seconds,

5  are inadequate to correct the deceptive net impression made by chanting "free, free, free, free" at

6  consumers for the bulk of the ad. "A solicitation may be likely to mislead by virtue of the net

7  impression it creates even though the solicitation also contains truthful disclosures."

8  *Cyberspace.com*, 453 F.3d at 1200.

9            **2.**     **Intuit's "Free" TurboTax Advertising Campaign Is Misleading**

10       The net impression of Intuit's advertising claims—that consumers can file their taxes

11  with TurboTax for "free"—is likely to mislead consumers. A representation is likely to mislead

12  consumers if the express or implied message conveyed is false or lacks a reasonable basis. *FTC*

13  *v. Pantron I Corp.*, 33 F.3d 1088, 1096 (9th Cir.1994). Advertisements that are "capable of being

14  interpreted in a misleading way should be construed against the advertiser." *FTC v. Gill*, 265 F.3d

15  944, 1045–46 (9th Cir. 2001). And the FTC is not required to show that every reasonable

16  consumer would have been, or in fact was, misled. *See Stefanchik*, 559 F.3d at 929.

17       The perspective of the consumer is also significant: "[W]e examine the practice from the

18  perspective of a consumer acting reasonably in the circumstances. If the representation or

19  practice affects or is directed primarily to a particular group, the Commission examines

20  reasonableness from the perspective of that group." *FTC Statement on Deception*, 103 F.T.C.

21  174, 175 (1984) (*appended to In re Cliffdale Assocs., Inc.*, 103 F.T.C. 110 (1984)) (hereinafter

22  "Deception Policy Statement"). Here, Intuit's ads are targeted to a particular group—taxpayers

23  during tax filing season. This is a large group, but it is nonetheless particularized, given the

24  unique circumstances surrounding tax preparation and filing. *See supra* Part I.B.5. The

25  reasonable consumer targeted by Intuit's ads is likely experiencing ████████████████

26  about filing their taxes. *Id.* Every U.S. taxpayer can relate. And Intuit's representation that at

27  least their taxes will be free is meaningful. *See infra* Part II.A.3. But Intuit's "free" claim is false

28

1  because TurboTax is not free for most consumers.[88] It is only free for certain consumers that

2  meet Intuit's eligibility criteria, and those criteria are not adequately disclosed in Intuit's

3  advertising. As described more fully above in Section I.B.2, a survey recently conducted by Yale

4  Professor of Marketing Nathan Novemsky, an expert in the psychology of judgment and

5  decision-making, confirms that consumers are misled by Intuit's "free" advertising campaign.

6          The fact that consumers learn that the "freemium" version of TurboTax is not "free" for

7  them prior to purchasing a paid version of TurboTax does not cure the deception. Misleading

8  door openers, like Intuit's, have long been held illegal. *See e.g., Encyc. Britannica, Inc.*, 87

9  F.T.C. 421, 495-97, 531 (1976), *aff'd*, 605 F.2d 964 (7th Cir. 1979), *as modified*, 100 F.T.C. 500

10  (1982), *as modified*, 104 F.T.C. 639 (1984). "[W]hen the first contact between the seller and a

11  buyer occurs through a deceptive practice, the law may be violated, even if the truth is

12  subsequently made known to the purchaser." *Deception Policy Statement*, 103 F.T.C. at 180 &

13  n.37; *see also FTC v. Commerce Planet, Inc.*, 878 F. Supp. 2d 1048, 1066 (C.D. Cal. 2012).

14                  **3.      Intuit's "Free" Claims Are Material**

15          Intuit's advertising claims that consumers can use TurboTax for "free" are material. A

16  representation, omission, or practice is material if it "involves information that is important to

17  consumers and, hence, likely to affect their choice of, or conduct regarding, a product."

18  *Cyberspace.com*, 453 F.3d at 1201. Whether a product or service is "free" matters to consumers.

19  It is well established that the offer of "free" products or services "is a promotional device

20  frequently used to attract customers" that "has often been found to be a useful and valuable

21  marketing tool." Guide Concerning Use of the Word "Free" and Similar Representations, 16

22  C.F.R. § 251.1(a)(1). "Because the purchasing public continually searches for the best buy, and

23  regards the offer of "free" merchandise or service to be a special bargain, all such offers must be

24  made with extreme care so as to avoid any possibility that consumers will be misled or

25  deceived." 16 C.F.R. § 251.1(a)(2). For this reason, the FTC has consistently taken the position

26  that "free" means free. *See generally* 16 C.F.R. § 251.1(b)(1) ("Meaning of 'Free'"). In other

27

28          [88] *See supra* note 62.

1   words, when a merchant advertises that a product or service is "free," the purchasing public

2   understands the word "free" to indicate that the consumer will pay nothing. *Id.* And the

3   purchasing public "has a right to believe that the merchant will not directly and immediately

4   recover, in whole or in part, the cost of the free merchandise or service …." *Id.*

5          An advertising claim that a product or service is "free" is a claim about the cost of the

6   advertised product or service. Advertising claims about the cost of a product or service pertain to

7   a central characteristic of the product or service, and therefore are presumptively material. *FTC v.*

8   *Commerce Planet, Inc.*, 878 F. Supp. 2d 1048, 1068 (C.D. Cal. 2012), *aff'd in part, vacated in*

9   *part on other grounds*, 815 F.3d 593 (9th Cir. 2016). Therefore, companies may not make

10  deceptive claims that products or services are "free" when that is not the case. *See, e.g., FTC v.*

11  *Triangle Media Corp.*, No. 18-cv-1388, 2018 WL 6305675 (S.D. Cal. Dec. 3, 2018), *aff'd sub*

12  *nom. FTC v. Hardwire Interactive, Inc.*, 765 F. App'x 184 (9th Cir. 2019); *In re Synchronal*

13  *Corp., et al.*, No. 9251, 1991 WL 639972, at *12 (F.T.C. Oct. 28, 1991).

14         Moreover, claims that an item is free require a heightened standard of disclosure of all

15  material terms, and all such offers must be made with extreme care to avoid any possibility that

16  consumers will be misled or deceived. Thus, when a product or service is offered for free, all the

17  terms and conditions of the offer should be made clear at the outset. *See* Guide Concerning Use

18  of the Word "Free" and Similar Representations 16 C.F.R. 251.1(c); *FTC v. Johnson*, 96 F. Supp.

19  3d 1110, 1146 (D. Nev. 2015). Hidden or poorly disclosed costs or conditions are deceptive. *FTC*

20  *v. Willms*, No. 11-cv-828, 2011 WL 4103542, at *6 (W.D. Wash. Sept. 13, 2011). This is

21  particularly true where, as here, the product or service is not free for most consumers—in 2020,

22  two-thirds of taxpayers were not eligible to use the free version of TurboTax.[89]

23      **B.    The Equities Favor Entry of a Temporary Restraining Order and**

24              **Preliminary Injunction**

25         Preliminary injunctive relief is warranted if the Court, in weighing the equities, finds that

26  injunctive relief is in the public interest. "[W]hen a district court balances the hardships of the

27

28      [89] *See supra* note 62.

public interest against a private interest, the public interest should receive greater weight."
*Affordable Media*, 179 F.3d at 1236. The public interest in this case is compelling—halting deceptive and injurious conduct at a time when many consumers are hurriedly preparing to meet the Tax Day deadline. Defendants, by contrast, have no legitimate interest in continuing to deceive consumers. Based on the evidence before the Court, the FTC is likely to succeed on the merits, and the equities tip decidedly in the public's favor. Thus, a TRO is warranted.

### C.   Any Purported Discontinuance of Illegal Conduct Is Insufficient to Avoid a TRO and Preliminary Injunction

Intuit has claimed that it is pulling some of the violative ads from the television airwaves and the internet. Whatever Intuit's intentions are, however, they are irrelevant to whether this Court should issue a TRO and preliminary injunction that puts a stop to Intuit's deception. "Indeed, the Supreme Court has counseled that courts should be wary of a defendant's termination of illegal conduct when, as here, such action is taken in anticipation of formal intervention." *FTC v. Sage Seminars, Inc.*, No. C95-2854, 1995 WL 798938, at *6 (N.D. Cal. Nov. 2, 1995) (Armstrong, J.). As Intuit's claimed cessation of conduct "occurred only *after* defendant[] learned that the FTC had commenced an investigation into [its] practices"—indeed, only after Intuit learned that the FTC was on the brink of litigation—the cessation "can hardly be considered 'voluntary.'" *Id.* In any event, the Court need not dwell long on whether Intuit's violations of the law are likely to recur, as any purported take-down is not complete, and the violative ads were still in the marketplace as at least as of March 28, 2022.[90] Moreover, without an injunction, Intuit would be permitted to launch a similarly deceptive "free" advertising campaign next tax season.

### III.   Conclusion

For these reasons, Plaintiff respectfully requests that the Court issue a TRO and PI.

---

[90] *See supra* note 4-5.

| | |
|---|---|
| 1 | Respectfully submitted, |
| 2 | |
| 3 | Dated: March 29, 2022 |

/s/ Roberto Anguizola
Roberto Anguizola, IL Bar No. 6270874
Frances Kern, MN Bar No. 395233
Rebecca Plett, VA Bar No. 90988
James Evans, VA Bar No. 83866
Federal Trade Commission
600 Pennsylvania Ave., NW, CC-5201
Washington, DC 20580
(202) 326-3284 / ranguizola@ftc.gov
(202) 326-2391 / fkern@ftc.gov
(202) 326-3664 / rplett@ftc.gov
(202) 326-2026 / james.evans@ftc.gov
(202) 326-3395 (fax)

**Attorneys for Plaintiff**
**Federal Trade Commission**