GOVERNMENT
EXHIBIT

**312**

Roberto Anguizola (IL Bar No. 6270874)
Frances Kern (MN Bar No. 395233)
Rebecca Plett (VA Bar No. 90988)
James Evans (VA Bar No. 83866)
Federal Trade Commission
600 Pennsylvania Ave., NW, Mailstop CC-6316
Washington, DC 20580
(202) 326-3284 / ranguizola@ftc.gov
(202) 326-2391 / fkern@ftc.gov
(202) 326-3664 / rplett@ftc.gov
(202) 326-2026 / james.evans@ftc.gov

Attorneys for Plaintiff
Federal Trade Commission

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **Federal Trade Commission**, | No. 22-cv-01973-CRB |
| Plaintiff, | **Declaration of James Evans in Support of Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction** |
| v. | |
| **Intuit Inc.**, | |
| Defendant. | Pursuant to 28 U.S.C. § 1746 |

I, James Evans, have personal knowledge of the facts and matters set forth below. If called as a witness, I could and would testify as follows:

1.      I am one of the attorneys representing the Federal Trade Commission ("FTC") in *Federal Trade Commission v. Intuit Inc.*, No. 22-cv-01973, pending before the United States District Court for the Northern District of California.

2.      I am over twenty-one years old and am a citizen of the United States. I am a member in good standing of the Virginia State Bar (Bar No. 83866), and am admitted to practice before the United States District Court for the Eastern District of Virginia. I represent the FTC in the United States District Court for the Northern District of California pursuant to Local Rule 11-2. My business address is 600 Pennsylvania Avenue, NW, Mailstop CC-6316, Washington, DC 20580.

I.      **Introduction**

3.      FTC staff members have worked diligently on the FTC's investigation of Intuit since it was opened in May 2019. As explained in more detail below, **from June 2019 through November 2020**, FTC staff assigned to this matter, among many other things:

a)      Engaged in privileged and confidential deliberative processes with relevant FTC decision-making authorities to secure the issuance of Civil Investigative Demands ("CIDs") to Intuit (twice), eleven Intuit employees, and Google;

b)      Received and reviewed 194 pages of written responses that Intuit submitted pursuant to the CIDs issued to Intuit (plus a 560-page privilege log);

c)      Received and reviewed 67,017 documents—containing well over half a million pages—of document productions that Intuit submitted pursuant to the CIDs issued to Intuit;

d)      Took Investigational Hearings (depositions) of eight Intuit employees— including portions of the Hearings in which the witnesses testified as corporate representatives of Intuit—pursuant to CIDs issued to Intuit and its employees;

e)      Received and reviewed more than seven gigabytes of data from Google submitted pursuant to the CID to Google, as well as voluntary productions from Free File, Inc. and the Better Business Bureau of Los Angeles and Silicon Valley;

f)      Worked with one or more experts and/or consultants to design and conduct consumer surveys and/or testing; and

g)      Undertook an independent investigation of the TurboTax product and Intuit's marketing practices, as partially described in the Declaration of Diana F. Shiller (Dkt. No. 12, at PDF pgs. 627–55).

4.      Intuit substantially completed productions under the FTC's CIDs in November 2020. Between October 27, 2020 and December 28, 2020, Intuit voluntarily submitted an additional 540 pages of whitepapers, analyses, and reports that FTC staff reviewed and considered.

5.      On June 29, 2021, the FTC sent Intuit a proposed complaint and settlement order on behalf of the FTC and thirty-four state partners.

6.      As explained in more detail below, from the end of Intuit's substantive productions in **December 2020 through June 29, 2021**, FTC staff assigned to this matter, among many other things:

a)      Completed the review of materials submitted by Intuit and others, including materials produced pursuant to CID, voluntary productions, whitepapers, expert analyses and reports, and regular correspondence from counsel;

b)      Continued working with one or more experts and/or consultants to design and conduct consumer surveys and/or testing;

c)      Continued the independent investigation of the TurboTax product and Intuit's marketing practices;

d)      Engaged in substantial privileged and confidential deliberative processes at the staff level to consider what actions, if any, were appropriate to address staff's investigative findings;

e)      Engaged in privileged and confidential deliberative processes with state partners; and

f)      Engaged in privileged and confidential deliberative processes with relevant FTC decision-making authorities to secure authorization to share a proposed complaint and settlement order, and enter into consent negotiations, with Intuit.

7.     As explained in more detail below, from the FTC's sending the proposed complaint and settlement order on **June 29, 2021, through March 28, 2022**, when the FTC filed this action, FTC staff assigned to this matter, among many other things:

    a)    Engaged in substantial compromise negotiations with Intuit and state partners through the exchange of letters, emails, and draft settlements, as well as at least seven virtual meetings with counsel for the FTC, states, and Intuit;

    b)    Significantly, were made to **wait 108 days** from sending a revised proposed settlement to Intuit on November 10, 2021 to finally receiving a counterproposal on February 25, 2022, well after the beginning of the Tax Year 2021 filing season;

    c)    Continued working with one or more experts and/or consultants to design and conduct consumer surveys and/or testing;

    d)    Continued the independent investigation of the TurboTax product and Intuit's marketing practices;

    e)    Continued engaging in privileged and confidential deliberative processes with state partners; and

    f)    Engaged in privileged and confidential deliberative processes with relevant FTC decision-making authorities to secure authorization to file this action and issuance of the accompanying Administrative Complaint now pending before the FTC's Office of Administrative Law Judges.

8.     Before the FTC filed this action and the accompanying Administrative Complaint, the relevant FTC decision-making authorities provided Intuit with opportunities to address them directly. Thus, in addition to numerous meetings at the staff level, Intuit, including through its General Counsel, presented its case to the following:

    a)    Samuel Levine, Director of the Bureau of Consumer Protection, on March 23, 2022 (virtually, with state partner representatives);

    b)    Lina Khan, Chair of the Commission, on March 24, 2022 (virtually);

c)     Rebecca Kelly Slaughter, Commissioner, on March 25, 2022 (virtually);

d)     Noah Joshua Phillips, Commissioner, on March 28, 2022 (in person); and

e)     Christine S. Wilson, Commissioner, on March 28, 2022 (virtually).[1]

9.     On March 28, 2022, after the conclusion of the meetings discussed in paragraph 8, the Commission voted 3 to 1 (Phillips, Comm'r, dissenting) to issue the Administrative Complaint and authorize staff to seek a Temporary Restraining Order and Preliminary Injunction from this Court pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b). Staff filed this action later that night.

10.     In addition to the normal rigors of significant investigatory and deliberative processes, during the relevant time period:

*The Covid-19 Pandemic and Consumer Surveys / Testing*

a)     When the Covid-19 pandemic took hold beginning in March 2020, the FTC had to abandon plans for in-person consumer research;

b)     The necessary switch to online consumer research involved additional work planning and reworking the survey for an online environment and a change in survey / testing costs, which required the FTC to undergo lengthy government contracting processes;

c)     Relatedly, despite a common misperception that the federal government enjoys endless resources, securing funding for experts and consultants at the FTC has been challenging in recent years,[2] which has resulted in the

---

[1] The fifth FTC Commissioner's seat is currently vacant; the President's nominee is on the Senate Executive Calendar for confirmation. *See* congress.gov/nomination/117th-congress/1541.

[2] *See* Fiscal Year 2021 Report on the FTC's Top Management and Performance Challenges, FTC OIG Report No. OIG-21-05, at 5–6 (Sept. 30, 2021), *available at* ftc.gov/system/files/documents/reports/final-oig-fy-2021-report-ftcs-top-management-performance-challenges/oig_fy_2021_ftc_top_management_challenges_final_report_9-30-21.pdf; Fiscal Year 2020 Agency Financial Report, at 49–51 (Nov. 13, 2020), *available at* ftc.gov/system/files/documents/reports/agency-financial-report-fy2020/ftc_fy2020_agency_financial_report_11-16-20_final.pdf; "Fed. Trade Comm'n: Protecting Consumers and Fostering Competition in the 21st Century," Testimony to the House Comm. on Appropriations, Subcomm. on Fin. Servs. & Gen. Gov't, at 4 (Sept. 25, 2019) ("expert witness contracts are an increasing need in light of the growing number of complex investigations and litigation in both competition and consumer protection matters"), *available at* ftc.gov/system/files/documents/public_statements/1545285/appropriations_committee_testimony_092519.pdf

Evans Declaration re: FTC TRO Reply
No. 22-cv-01973-CRB

1        award of contract funds taking longer and requiring significant work by

2        both FTC staff attorneys and contracting officers;

3     *The Covid-19 Pandemic and Mandatory Telework*

4    d)  On or around March 18, 2020, the FTC mandated that, with limited

5        exceptions, all employees would move to full telework status under an

6        "evacuation order" issued by then-FTC Chairman Joseph Simons pursuant

7        to Office of Personnel Management regulations;

8    e)  The evacuation order was renewed in September 2020 by then-Chairman

9        Simons;

10   f)  The evacuation order was renewed in March 2021 by then-FTC Acting

11       Chairwoman Rebecca Kelly Slaughter;

12   g)  The evacuation order was renewed in September 2021, November 2021,

13       December 2021, and January 2022 by FTC Chair Lina Khan;

14   h)  Since the evacuation order ended February 26, 2022, the FTC has

15       continued to allow and encourage staff to continue to telework and

16       transition back to the office carefully;

17   *Change in Administration and Leadership*

18   i)  On January 19, 2021, then-FTC Chairman Simons announced his

19       resignation from the Commission, effective January 29, 2021;

20   j)  Then-Director of the Bureau of Consumer Protection Andrew Smith also

21       resigned from the Commission effective January 29, 2021;

22   k)  On January 21, 2021, the FTC announced that the President had

23       designated Commissioner Slaughter to serve as Acting Chair of the

24       Commission;

25   l)  On January 25, 2021, the FTC announced that then-Acting Chair

26       Slaughter had designated Daniel Kaufman to serve as Acting Director of

27       the Bureau of Consumer Protection effective January 30, 2021;

28

Evans Declaration re: FTC TRO Reply
No. 22-cv-01973-CRB

1

m)   On June 15, 2021, the Senate confirmed Lina Khan to serve as an FTC

2

Commissioner and the President designated her to serve as Chair of the

3

Commission;

4

n)   On June 24, 2021, Chair Khan announced that she had designated Samuel

5

Levine to serve as Acting Director of the Bureau of Consumer Protection;

6

and

7

o)   On September 28, 2021, the FTC announced that Chair Khan had

8

designated Samuel Levine to serve as Director of the Bureau of Consumer

9

Protection.

10

11.   **To summarize:** The FTC's investigation of Intuit is among the most significant

11

consumer protection investigations that the FTC has taken on in recent years. A small but

12

dedicated group of FTC staff have worked diligently on this matter for several years. Staff has

13

received and reviewed copious amounts of material submitted by Intuit and third parties, and has

14

undertaken its own investigation and worked with one or more experts and/or consultants. Staff

15

has coordinated with multiple states on the investigation and possible compromise of this matter.

16

And all involved—FTC staff, the states, Intuit, defense counsel—have endured a global

17

pandemic throughout most of the pendency of the matter. In compromise negotiations, the FTC

18

and states worked diligently to keep a large group of sovereigns coordinated, while at the same

19

time Intuit, just one company, often took substantial time to engage—on one significant

20

occasion, delaying 108 days to respond to a settlement draft while allowing the Tax Year 2021

21

filing season to begin. The investigation and initiation of litigation have proceeded without

22

undue delay, while affording Intuit every opportunity to be heard in the decision-making process.

23

The FTC and its staff have proceeded as swiftly as possible under the circumstances to take

24

necessary and appropriate actions to protect consumers while affording Intuit due process,

25

consistent with the FTC's statutory mandate and mission.

26

27

28

Evans Declaration re: FTC TRO Reply
No. 22-cv-01973-CRB

**II.      The FTC's Investigation of Intuit**

**A.      CIDs to Intuit**

12.      I have personally reviewed materials and testimony that Intuit submitted to the FTC as part of the FTC's investigation. The charts appearing at paragraphs 13, 14, 17, and 18, below, summarize Intuit's submissions. On these charts:

a)      All Bates numbers should be read to include the preface "INTUIT-FFA-FTC-";

b)      "DR" means "Document Request":

c)      "Rog." means "Interrogatory";

d)      "CID 1" refers to the FTC Civil Investigative Demand issued to Intuit Inc. on June 28, 2019;

e)      "CID 2" refers to the FTC Civil Investigative Demand issued to Intuit Inc. on May 18, 2020; AND

f)      The "CIDs" refers to both CID 1 and CID 2.

13.      The following chart summarizes Intuit's written responses to the CIDs:

| Date | Description | Pages |
|---|---|---|
| July 29, 2019 | Letter re: CID 1, DR 1 | 2 |
| July 31, 2019 | Letter re: CID 1, Rogs. 1–3, & 5, & DR 1, 3, 9, & 12 | 16 |
| September 4, 2019 | Letter re: CID 1, Rog. 2 | 10 |
| September 13, 2019 | Letter re: CID 1, Rogs. 1, 3–5, & DR 2–12 | 22 |
| October 11, 2019 | Letter re: CID 1, Rogs. 3–6, & DR 2–11 | 18 |
| November 21, 2019 | Letter re: CID 1, Rogs. 4 & 5, & DR 2–4, & 6–11 | 10 |
| December 23, 2019 | Letter re: CID 1, Rogs. 1 & 5, & DR 2, 6–11 | 8 |
| January 23, 2020 | Letter re: privilege log and DR 2, 6–9, & 11 | 5 |
| | Privilege log for 1,795 documents | 560 |
| March 4, 2020 | Letter re: responses to FTC questions posed in January 28, 2020 email | 9 |
| March 18, 2020 | Letter re: responses to FTC questions posed in March 5, 2020 email | 2 |
| March 27, 2020 | Letter re: CID 1, DR 2, 6–9, & 11 | 3 |
| July 1, 2020 | Letter re: CID 2, Rogs. 1, 5, & 20, & DR 4 | 7 |
| July 31, 2020 | Letter re: CID 2, Rogs. 2–4, 6–10, 12–19, 21, 22, 24, & 25, & DR 3, 5, & 6 | 53 |

| Date | Description | Pages |
|---|---|---|
| October 1, 2020 | Letter re: responses to FTC questions posed in September 22, 2020 letter | 15 |
| November 9, 2020 | Letter re: Twitter feed referenced in the cross-examination of Cathy Goode | 1 |
| November 16, 2020 | Letter (dated 11/13) re: CID 1, Rogs. 2 & 5, & CID 2, Rogs. 1, 4, 6–9, 12, 14, 19, & 21, & DR 4 | 13 |
| | **Total Pages (with the privilege log):** | **754** |
| | **Total Pages (without the privilege log):** | **194** |

14.     The following chart summarizes Intuit's document productions in response to the CIDs:

| Date | Description | Documents | Pages |
|---|---|---|---|
| July 29, 2019 | Bates range 000000001 to 000012628 | 6 | 12,628 |
| July 31, 2019 | Bates range 000012629 to 000014199 | 264 | 1,571 |
| September 13, 2019 | Bates range 000014200 to 000131464 | 8,360 | 117,265 |
| October 11, 2019 | Bates range 000131465 to 000169796 | 5,999 | 38,332 |
| November 21, 2019 | Bates range 000169797 to 000267668 | 15,968 | 97,872 |
| December 23, 2019 | Bates range 000267669 to 000427191 | 22,563 | 159,523 |
| January 23, 2020 | Bates range 000427192 to 000525024 | 8,254 | 97,833 |
| March 18, 2020 | Bates range 000525025 to 000525065 | 6 | 41 |
| | Reproduction of 6,737 pages in color | | (non-cumulative) |
| March 27, 2020 | Bates range 000525066 to 000528208 | 263 | 3,143 |
| July 1, 2020 | Bates range 000528209 to 000528264 | 36 | 56 |
| July 31, 2020 | Bates range 000528265 to 000550014 | 5,166 | 21,750 |
| October 5, 2020 | Bates range 000550015 to 000550606 | 120 | 592 |
| November 9, 2020 | Bates range 000550607 to 000551349 | 5 | 743 |
| November 16, 2020 | Bates range 000551357 to 000551364 | 7 | 8 |
| | **Totals:** | **67,017** | **551,357** |

15.     The page count that appears in the chart in paragraph 14 is based only on the

Bates numbers, and is thus a dramatic undercount because Intuit produced thousands of

documents in native format with one Bates number per file, instead of individual Bates numbers

per page. This was pursuant to the FTC's instructions because it is not practical to review images

of some document types, principally spreadsheets and full-color presentations; but it does affect

the ability to achieve an accurate page count based on Bates numbers alone. As an example of

Evans Declaration re: FTC TRO Reply
No. 22-cv-01973-CRB

1   the scope of the issue, Intuit produced more than 8,000 spreadsheets with the file extension

2   XLSX, and that is just one file type that was generally produced in native format.

3       16.     Intuit clawed back only a small handful of documents for privilege reasons during

4   the course of production.

5       17.     The following chart summarizes Intuit's other significant written submissions

6   during the course of the FTC's investigation:

| Date | Description | Pages |
|---|---|---|
| July 25, 2019 | Presentation | 43 |
| October 27, 2020 | First Whitepaper | 24 |
| November 4, 2020 | Second Whitepaper | 27 |
| | Analysis by Rebecca Kirk Fair | 162 |
| November 10, 2020 | Third Whitepaper | 42 |
| | Report of Professor Peter N. Golder, Ph.D. | 238 |
| November 16, 2020 | Presentation by Rebecca Kirk Fair and Peter Golder, Ph.D. | 31 |
| December 8, 2020 | Fourth Whitepaper | 9 |
| December 28, 2020 | Fifth Whitepaper | 5 |
| | Additional Materials from Rebecca Kirk Fair | 2 |
| March 18, 2021 | Letter re: responses to FTC questions posed in March 8 and 11, 2021 emails | 3 |
| May 28, 2021 | Comment of Intuit Inc. to the FTC on "Bringing Dark Patterns to Light: An FTC Workshop" | 4 |
| August 3, 2021 | Information re: customer service | 2 |
| March 17, 2022 | Whitepaper to the Bureau of Consumer Protection | 24 |
| | **Total Pages:** | **616** |

21      18.     The following chart summarizes the testimony provided by Intuit and its

22  employees during the course of the FTC's investigation, pursuant to CIDs issued May 18, 2020

23  (and corrected and reissued as to eleven individuals on July 20, 2020):

| Date | Witness | Pages of Transcript | Exhibits Cited in Transcript (cited in transcripts by Exhibit No.) |
|---|---|---|---|
| Sept. 29, 2020 | Greg Johnson (filed as GX 152) | 214 | GX 001; GX 002; GX 003; GX 004; GX 005; GX 006; GX 007; GX 008; GX 009; GX 010; GX 011; GX 012 |

| Date | Witness | Pages of Transcript | Exhibits Cited in Transcript (cited in transcripts by Exhibit No.) |
|---|---|---|---|
| Oct. 1, 2020 | Monica Muilenburg (filed as GX 154) | 240 | GX 002; GX 013; GX 014; GX 015; GX 016; GX 017; GX 018; GX 019; GX 020; GX 021; GX 022; GX 023; GX 024; GX 025; GX 026; GX 027; GX 028; GX 029; GX 030; GX 031; GX 032; GX 033; GX 034; GX 035; GX 036 |
| Oct. 7, 2020 | Erin Smith (filed as GX 157) | 187 | GX 002; GX 037; GX 038; GX 039; GX 040; GX 041; GX 042; GX 043; GX 044; GX 045; GX 046; GX 047; GX 048; GX 049; GX 050; GX 051; GX 052 |
| Oct. 9, 2020 | Cathleen Ryan (filed as GX 156) | 186 | GX 002; GX 053; GX 054; GX 055; GX 056; GX 057; GX 058; GX 059; GX 060; GX 061; GX 062; GX 063 |
| Oct. 15, 2020 | Mandy Ison (filed as GX 151) | 186 | GX 002; GX 054; GX 055; GX 056; GX 060; GX 061; GX 064; GX 065; GX 066; GX 067; GX 068; GX 069; GX 070; GX 071; GX 072; GX 073; GX 074; GX 075; GX 076; GX 077; GX 078; GX 079; GX 080; GX 081; GX 082; GX 083; GX 084; GX 085; GX 086 |
| Oct. 20, 2020 | Joe Lillie (filed as GX 153) | 211 | GX 002; GX 054; GX 055; GX 056; GX 077; GX 080; GX 087; GX 088; GX 089 |
| Oct. 23, 2020 | Cathy Goode (filed as GX 150) | 279 | GX 002; GX 046; GX 047; GX 051; GX 054; GX 055; GX 056; GX 080; GX 090; GX 091; GX 092; GX 093; GX 094; GX 095; GX 096; GX 097; GX 098; GX 099; GX 100; GX 101; GX 102; GX 103 |
| Oct. 30, 2020 | Jack Rubin (filed as GX 155) | 218 | GX 002; GX 054; GX 055; GX 056; GX 077; GX 080; GX 105; GX 106; GX 107; GX 108; GX 109; GX 110; GX 111; GX 112; GX 113; GX 114; GX 115; GX 116 |
| | **Total Pages:** | **1,721** | **Total Unique Exhibits:**        **115** |

19.     The FTC filed the transcripts of these Investigational Hearings (depositions) in Volumes 3–6 of its initially-filed exhibits as GX 150–57 (Dkt. No. 7–7, 7–8, 7–9, & 7–10). The FTC filed the exhibits from these Investigational Hearings in Volumes 1 and 2 of its initially-filed exhibits, bearing as GX exhibit numbers the same numbers they were assigned as consecutively-numbered Investigational Hearing exhibits (Dkt. No. 7–3, 7–4, 7–5, & 7–6). All of

1    this material was filed as attachments to the FTC's Administrative Motion to Consider Whether

2    Another Party's Material Should be Sealed (Dkt. No. 7) because it was designated confidential

3    by Intuit. The FTC chose to file the entire Investigational Hearing record with the Court so that

4    these exhibits will be on the record with their assigned exhibit numbers for all purposes for the

5    duration of the matter, in accordance with the spirit of Local Rule 30-2(b)(3) on deposition

6    exhibits.

7          20.    The FTC also issued CIDs for Investigational Hearings to three additional Intuit

8    employees, but later agreed to forgo those Hearings.

9                a)    The FTC issued a CID but agreed to forgo one Investigation Hearing

10                    entirely, that of Daniel McCarthy, then-Vice President in Intuit's

11                    Consumer Tax Group.

12                b)    The FTC agreed to accept a declaration authenticating documents in lieu

13                    of testimony from Heather Hillerman, then a Marketing Manager. Ms.

14                    Hillerman's declaration, dated October 16, 2020, authenticated sixty-four

15                    documents.

16                c)    The FTC agreed to accept a declaration authenticating documents in lieu

17                    of testimony from Michael "Mickey" Bordonaro, then a Director of

18                    Marketing. Mr. Bordonaro's declaration, dated October 20, 2020,

19                    authenticated 37 documents.

20          21.    On July 7, 2020, Intuit filed a Petition to Quash in Part regarding the FTC's

21    second CID to Intuit issued May 19, 2020. The Petition is available on the FTC's website at

22    https://www.ftc.gov/system/files/documents/petitions-quash/turbotax-

23    inc/1923119turbotaxptq.pdf. On August 17, 2020, the Commission, by Commissioner Phillips,

24    denied Intuit's Petition. The Order Denying the Petition is available on the FTC's website at

25    https://www.ftc.gov/system/files/documents/petitions-quash/turbotax-

26    inc/1923119turbotaxorderdenyingptq.pdf.

27

28

22.     During the course of the FTC's investigation of Intuit, representatives of the FTC and Intuit have engaged in numerous meetings, videoconferences, and/or teleconferences. Selected significant meetings include:

       a)     July 25, 2019, presentation from counsel for Intuit to the FTC;

       b)     March 5, 2020, conference between counsel for the FTC and Intuit;

       c)     April 16, 2020, presentation from counsel for Intuit to the FTC;

       d)     May 27, 2020, conference between counsel for the FTC and Intuit on Investigational Hearings;

       e)     June 4, 2020, conference between counsel for the FTC and Intuit on interrogatories and document requests in the second CID to Intuit;

       f)     June 17, 2020, conference between counsel for the FTC and Intuit on the second CID to Intuit;

       g)     July 28, 2020, conference between counsel for the FTC and Intuit on Investigational Hearings;

       h)     November 16, 2020, presentation from counsel and expert (Rebecca Kirk Fair) for Intuit to the FTC; and

       i)     March 16, 2021, conference between counsel for the FTC and Intuit.

**B.     Other Sources**

23.     As part of the FTC's investigation of Intuit, in addition to the CIDs to Intuit and eleven of its employees, the FTC issued a CID to Google LLC on September 19, 2019, seeking documents regarding Google AdWords paid search engine advertising accounts registered to Intuit or TurboTax. In a response dated October 30, 2019, Google produced documents regarding fifteen such accounts. The production contained a cover letter, 15 PDF files with account registration information, and 92 CSV (comma separated value) data files with paid search advertising data pertaining to the fifteen accounts. The CSV files contained more than 7.8 gigabytes of advertising data, comprising more than 9.7 million rows of data.

24.     As part of the FTC's investigation of Intuit, the FTC also received three submissions of materials from Free File, Inc. ("FFI"):

a)      On July 19, 2019, FFI submitted 10 pages of articles that were discussed on a call between FTC and FFI counsel the day before;

b)      On August 19, 2019, FFI submitted 23 pages of FFI internal documents; and

c)      On August 28, 2019, FFI submitted 121 pages of additional FFI internal documents.

25.     As part of the FTC's investigation of Intuit, the FTC also received a submission of 595 documents related to consumer complaints from the Better Business Bureau of Los Angeles and Silicon Valley on or about July 1, 2019.

26.     The events discussed above are presented in summary form in the Appendix attached hereto, a Unified Chronology of events.

**III.    Compromise Negotiations[3]**

27.     As noted in paragraphs 5 and 7, above, compromise negotiations in this matter opened on June 29, 2021, when the Director of the FTC Bureau of Consumer Protection authorized staff to send Intuit a proposed complaint and settlement order on behalf of the FTC and thirty-four state partners.

28.     As a preface to, or part of, consent negotiations, the FTC twice sought to come to an agreement with Intuit on a tolling agreement:

a)      In April 2020, the FTC sent Intuit a draft tolling agreement. Intuit returned a markup that contained many changes that were not acceptable to the FTC. FTC staff determined to proceed at that time without a tolling agreement.

b)      On December 14, 2021, after consent negotiations had been ongoing for five and a half months, FTC counsel wrote to Intuit counsel: "In order to continue with our settlement negotiations, we need a tolling agreement in place. Please see the attached. We note that the states informed us Intuit

---

[3] The facts stated in this Declaration are not offered to prove or disprove the validity or amount of a disputed claim in this litigation, or to impeach; they are provided principally to negate a contention of undue delay that Intuit made in its Opposition to the FTC's Motion for a TRO.

Evans Declaration re: FTC TRO Reply
No. 22-cv-01973-CRB

1          has already executed a tolling agreement with respect to state law claims."

2          After exchanging several rounds edits, the FTC and Intuit fully executed a

3          tolling agreement as of January 6, 2022, which was subsequently extended

4          by agreement of the parties.

5     29.   Settlement negotiations in this matter have involved substantial back-and-forth

6  over a prolonged period. Written settlement communications have included:

7          a)   June 29, 2021, the FTC sent Intuit a proposed complaint and settlement

8               order on behalf of the FTC and thirty-four state partners, noting that the

9               Acting Director of the Bureau of Consumer Protection had authorized staff

10              to negotiate for up to forty-five days (after that, staff were to recommend

11              to the Commissioners whether to initiate proceedings against Intuit);

12         b)   July 14, 2021, a letter from counsel for Intuit to the FTC and the states

13              opened by noting Intuit's "surprise[] to see that the draft Complaint does

14              not engage with either the facts or the arguments Intuit has shared in its

15              presentations and white papers, nor does it reflect information provided

16              through voluminous document productions and multiple investigational

17              hearings"—it included questions but no counteroffer;

18         c)   August 2, 2021, after a July 29 conference (see *infra* ¶ 30(b)), counsel for

19              Intuit sent an email to the FTC and states stating, in part, "Intuit hopes to

20              make a counter-proposal shortly":

21         d)   August 2, 2021, after receiving the email listed in paragraph 29(c), FTC

22              staff provided citations and legal analysis regarding an issue Intuit had

23              asked about;

24         e)   August 12, 2021, on the deadline set by the Acting Director of the Bureau

25              of Consumer Protection, counsel for Intuit sent the FTC and states a

26              "Proposed Letter Agreement";

27

28

f) August 13, 2021, the day after receiving Intuit's "Proposed Letter Agreement," a joint letter from the FTC and the State of New York, Office of the Attorney General, advised counsel for Intuit, in part:

> We are in receipt of your proposed letter agreement, sent August 12, 2021. Having evaluated it, we do not view it as a genuine counteroffer to resolve the allegations in our proposed Complaint.
>
> As you know, the Acting Director of the FTC's Bureau of Consumer Protection set a deadline for consent negotiations to end by August 12, 2021. Therefore, we are now preparing to advance a recommendation to file the proposed Complaint. If you would like us to pause this process to engage in genuine settlement negotiations, please send us a revised counteroffer no later than Friday, August 20.

g) August 20, 2021, counsel for Intuit sent the FTC and states a significantly marked-up copy of the original proposed order of June 29, 2021;

h) September 28, 2021, the FTC, on behalf of itself and the states, sent counsel for Intuit a marked-up copy of the original proposed order of June 29, 2021 showing Intuit-requested changes that the FTC and the states could accept;

i) October 13, 2021, the FTC, on behalf of itself and the states, sent counsel for Intuit legal analysis regarding a certain proposed injunctive term;

j) October 18, 2021, in advance of a meeting the next day (see *infra* ¶ 30(e)), counsel for Intuit sent the FTC and states "some proposed language on two of the open items from our discussion two weeks ago";

l) November 10, 2021, after significant privileged and confidential discussion between the FTC and states, the FTC, on behalf of itself and the states, sent counsel for Intuit a new proposal for a settlement order's definitions section and most of its injunctive provisions—the email also noted that the FTC and the states wanted to turn the discussion towards

1      monetary redress for consumers next (this would be the last time terms

2      were seriously discussed until late February 2022);

3    k)    December 7, 2021, counsel for Intuit sent the FTC and states a letter with

4          comments on certain injunctive provisions and monetary considerations—

5          it attached screenshots from TurboTax and asked the FTC and states to

6          review them and provide feedback at an upcoming meeting;

7    l)    From December 14, 2021 to January 6, 2022, the FTC and Intuit

8          negotiated a tolling agreement, as discussed in paragraph 28, above;

9    m)    December 22, 2021, counsel for Intuit sent the FTC and states an email

10          posting several questions, and stating that "Intuit is preparing a

11          counteroffer that it hopes to share after the New Year" (this was the 43rd

12          day after the FTC and states sent the last significant draft on November

13          10, 2021);

14    n)    January 12, 2022, the FTC and states responded to the questions posed in

15          Intuit's December 22, 2021 email;

16    o)    January 31, 2022, the FTC sent an email to counsel for Intuit stating:

17          "**Some time has passed since our last exchange on settlement.** We

18          assume Intuit remains committed to the ongoing settlement process. Please

19          let us know when we can expect to hear from you. We would like to make

20          forward progress on this in the near term." (emphasis added) (this was the

21          83rd day after the FTC and states sent the last significant draft on

22          November 10, 2021, and by this time, the Tax Year 2021 filing season had

23          begun);

24    p)    January 31, 2022, in response to the email listed in paragraph 29(p),

25          counsel for Intuit wrote to the FTC: "Intuit remains committed to

26          exploring whether there is a resolution of the matter that does not involve

27          litigation.  To that end, we will be back in touch as soon as we are able.";

28

q)    February 17, 2022, Intuit wrote to the FTC and states that: "Intuit intends to submit a written counteroffer next week. We would like to schedule a meeting the week of February 28 to explain our thinking on the offer, answer any questions, and also hear from the states on our outstanding questions regarding injunctive relief. We suggest a meeting on March 1, somewhere between 12-4. If that date does not work, please suggest times that would." (this was the 101st day after the FTC and states sent the last significant draft on November 10, 2021);

r)    February 18, 2022, the FTC responded to email listed in paragraph 29(r): "Thank you for the email. FTC staff are available anytime on [March 1]. **We are also available well before that and continue to be concerned about the pace of the negotiations.** If Intuit can be ready before March 4, we would welcome that." (emphasis added);

s)    February 25, 2022, counsel for Intuit sent a new proposed settlement to the FTC and states in the form of a Power Point presentation and attached term sheet (this was the **108th day** after the FTC and states sent the last significant draft on November 10, 2021, and about half way through the Tax Year 2021 filing season);

t)    March 2, 2022, after a meeting the day before (see *infra* ¶ 30(i)), the FTC advised counsel for Intuit via email that staff had recommended to the Director of the Bureau of Consumer Protection that the FTC initiate an action against Intuit, and attached a copy of an updated proposed complaint. The transmittal email stated as follows in relevant part:

> We have also updated the facts [in the proposed Complaint] to include Intuit's **ongoing 'free' advertising campaign** and to make clear that **the complaint covers advertising through all mediums, including TV, social media, web pages**, etc... [sic] We are troubled that **Intuit has renewed this advertising campaign for the current tax season despite knowing of [FTC] staff's concerns**. (emphasis added);

1          and

2               u)     March 3, 2022, the FTC, on behalf of itself and some state partners,

3                      communicated an updated monetary settlement figure to counsel for Intuit.

4          30.     During the course of the FTC's consent negotiations with Intuit, representatives of

5    the FTC, offices of state attorneys general, and Intuit have engaged in numerous meetings,

6    videoconferences, and/or teleconferences. Such meetings include:

7               a)     June 23, 2021, conference between counsel for the FTC and Intuit;

8               b)     July 29, 2021, conference between counsel for the FTC, states, and Intuit;

9               c)     August 16, 2021, conference between counsel for the FTC, states, and

10                     Intuit, Intuit provided copy of presentation;

11              d)     October 5, 2021, conference between counsel for the FTC, states, and

12                     Intuit;

13              e)     October 19, 2021, conference between counsel for the FTC, states, and

14                     Intuit;

15              f)     December 10, 2021, conference between counsel for the FTC, states, and

16                     Intuit;

17              g)     January 11, 2022, conference between counsel for the FTC and Intuit on

18                     tolling agreement issues;

19              h)     February 7, 2022, conference between counsel for the FTC and Intuit; and

20              i)     March 1, 2022, conference between counsel for the FTC, states, and Intuit.

21         31.     Some additional communications in the final days before this action was filed

22   deserve mention.

23              a)     March 23, 2022, less than an hour after the conclusion of Intuit's meeting

24                     with the Director of the Bureau of Consumer Protection, counsel for Intuit

25                     sent an email to the FTC about its invitation to meet and confer about

26                     redactions to the FTC's draft papers based on Intuit's confidentiality

27                     designations—counsel wrote:

28                          What do you anticipate discussing at a meet and confer about
                            confidentiality? We intend to send you our proposed designations

1   and at that point, there is really nothing else to discuss. If you have
    something else in mind, we are happy to consider it **but we are not**
2   **interested in giving the FTC further opportunities to waste our**
3   **time.** (emphasis added)

4           Given the timing, the implication that Intuit's meeting with the Director of

5           the Bureau of Consumer Protection was a "waste [of] time" was clear to

6           FTC staff.

7       b)  March 24, 2022, at 9:14 pm ET, a little over seven hours after the

8           conclusion of Intuit's meeting with the Chair of the FTC, counsel for Intuit

9           sent an email to the Chair, copying only one FTC staff-level attorney,

10          stating: "I wanted to share that Intuit has decided that it will pull down the

11          'free, free, free' TV ads for the remainder of the tax season." This came on

12          the 269th day after the FTC first sent Intuit a draft complaint concerning

13          this conduct, and 22 days after FTC staff told counsel for Intuit that: "We

14          are troubled that Intuit has renewed this ['free'] advertising campaign for

15          the current tax season despite knowing of [FTC] staff's concerns." *See*

16          *supra* ¶ 29(u). And, as detailed in the FTC's Reply brief, it did not resolve

17          the FTC's concerns.

18      32.  The events discussed above are presented in summary form in the Appendix

19  attached hereto, a Unified Chronology of events.

20  **IV.   Other Issues**

21      33.  I have reviewed the Declaration of David Gringer in Support of Intuit Inc.'s

22  Opposition to Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary

23  Injunction (Dkt. 41–1).

24      a)  Summary statements regarding the timing of the FTC's actions that appear

25          in paragraphs 9 and 11 of Mr. Gringer's Declaration are explained in full

26          above.

27      b)  In paragraph 10 of his Declaration, Mr. Gringer stated:

28              After the parties had nearly reached an agreement on injunctive
                relief in November 2021, ahead of the current tax season, the FTC

Evans Declaration re: FTC TRO Reply
No. 22-cv-01973-CRB

1   refused to further discuss injunctive relief unless Intuit agreed to
    pay the FTC a substantial sum of money, even though the FTC
2   lacks authority to obtain monetary relief under Section 13(b), as
3   recognized by the United States Supreme Court in *AMG Capital
    Management, LLC v. FTC*, 141 S. Ct. 1341 (2021).

4

5   This statement mischaracterizes the facts and requires correction. The June

6   29, 2021 initial proposed settlement order provided—and any settlement

7   with Intuit that the FTC would entertain as a possible resolution of this

8   matter would provide—that any judgment:

9       [I]s entered in favor of the Plaintiffs against Defendant as
        monetary relief for distribution as consumer redress. … All money
10      paid to the Commission pursuant to this Order may be deposited
11      into a fund administered by the Commission or its designee to be
        used for consumer redress and any attendant expenses for the
12      administration of any redress fund. If a representative of the
13      Commission decides that direct redress to consumers is wholly or
        partially impracticable or money remains after redress is
14      completed, the Commission may apply any remaining money for
15      such other relief (including public notification remedies) as it
        determines to be reasonably related to Defendant's practices
16      alleged in the Complaint. Any money not used for such relief is to
        be deposited to the U.S. Treasury as disgorgement.
17

18  This is standard FTC order language. Any demand that "Intuit agree[] to

19  pay the FTC a substantial sum of money" is for the benefit of

20  consumers—not the FTC. Further, the FTC is enabled to accept a

21  monetary settlement of potential claims under Section 19 of the FTC Act,

22  which was not affected by *AMG*, and states are enabled to obtain monetary

23  relief under applicable laws and designate the FTC as their consumer

24  redress coordinator.

25      34.     On the evening of Sunday, March 27, 2022, I watched parts of the live telecast of

26  the 94th Academy Awards ceremony (the Oscars). During that broadcast, I saw an Intuit

27  advertisement for TurboTax that made "free" claims. The 15-second ad involved a man spitting

28  out his coffee when the narrator told him that he could have a tax expert prepare his taxes for free

with TurboTax. A copy of that ad is filed herewith as GX 307 (and as screenshots in GX 308), as

discussed in the Second Declaration of Diana F. Shiller, ¶ 7, also filed herewith.


      I declare under penalty of perjury that the foregoing is true and correct.


Executed:  April 7, 2022

          Washington, D.C.                          James Evans

# APPENDIX: UNIFIED CHRONOLOGY

**Key to color coding:**

| | | | |
|---|---|---|---|
| CID issued | Intuit CID response | Meeting | |
| Investigational Hrg. | Other submission | Settlement related | |
| 3rd pty. submission | Other | | |

| Date | Event | Dec. ¶ |
|---|---|---|
| June 28, 2019 | FTC issued first CID to Intuit | 12(d) |
| July 1, 2019 | BBB submitted documents to the FTC | 25 |
| July 19, 2019 | Free File, Inc. submitted documents to the FTC | 24(a) |
| July 25, 2019 | Meeting w/ counsel for FTC and Intuit | 22(a) |
| July 25, 2019 | Intuit submitted a copy of its presentation | 17 |
| July 29, 2019 | Intuit submitted a partial CID response | 13, 14 |
| July 31, 2019 | Intuit submitted a partial CID response | 13, 14 |
| Aug. 19, 2019 | Free File, Inc. submitted documents to the FTC | 24(b) |
| Aug. 28, 2019 | Free File, Inc. submitted documents to the FTC | 24(c) |
| Sept. 4, 2019 | Intuit submitted a partial CID response | 13 |
| Sept. 13, 2019 | Intuit submitted a partial CID response | 13, 14 |
| Sept. 19, 2019 | FTC issued CID to Google | 23 |
| Oct. 11, 2019 | Intuit submitted a partial CID response | 13, 14 |
| Oct. 30, 2019 | Google submitted its CID response | 23 |
| Nov. 21, 2019 | Intuit submitted a partial CID response | 13, 14 |
| Dec. 23, 2019 | Intuit submitted a partial CID response | 13, 14 |
| Jan. 23, 2019 | Intuit submitted a partial CID response | 13, 14 |
| Mar. 4, 2020 | Intuit submitted a partial CID response | 13 |
| Mar. 5, 2020 | Meeting w/ counsel for FTC and Intuit | 22(b) |
| Mar. 18, 2020 | Intuit submitted a partial CID response | 13, 14 |
| Mar. 27, 2020 | Intuit submitted a partial CID response | 13, 14 |
| Apr. 16, 2020 | Meeting w/ counsel for FTC and Intuit | 22(c) |
| May 18, 2020 | FTC issued second CID to Intuit and 11 IH CIDs | 12(e), 18 |
| May 27, 2020 | Meeting w/ counsel for FTC and Intuit | 22(d) |
| June 4, 2020 | Meeting w/ counsel for FTC and Intuit | 22(e) |
| June 17, 2020 | Meeting w/ counsel for FTC and Intuit | 22(f) |
| July 1, 2020 | Intuit submitted a partial CID response | 13, 14 |
| July 7, 2020 | Intuit filed its Petition to Quash in Part the Second CID | 21 |
| July 20, 2020 | FTC corrected and reissued the 11 IH CIDs | 18 |

| Date | Event | Dec. ¶ |
|---|---|---|
| July 28, 2020 | Meeting w/ counsel for FTC and Intuit | 22(g) |
| July 31, 2020 | Intuit submitted a partial CID response | 13, 14 |
| Aug. 17, 2020 | FTC, by Comm'r Phillips, denied the Petition to Quash | 21 |
| Sept. 29, 2020 | Investigational Hearing of Greg Johnson | 18 |
| Oct. 1, 2020 | Investigational Hearing of Monica Muilenburg | 18 |
| Oct. 1, 2020 | Intuit submitted a partial CID response | 13 |
| Oct. 5, 2020 | Intuit submitted a partial CID response | 14 |
| Oct. 7, 2020 | Investigational Hearing of Erin Smith | 18 |
| Oct. 9, 2020 | Investigational Hearing of Cathleen Ryan | 18 |
| Oct. 15, 2020 | Investigational Hearing of Mandy Ison | 18 |
| Oct. 16, 2020 | Declaration of Heather Hillerman | 20(b) |
| Oct. 20, 2020 | Investigational Hearing of Joe Lillie | 18 |
| Oct. 20, 2020 | Declaration of Michael Bordonaro | 20(c) |
| Oct. 23, 2020 | Investigational Hearing of Cathy Goode | 18 |
| Oct. 27, 2020 | Intuit submitted a whitepaper | 17 |
| Oct. 30, 2020 | Investigational Hearing of Jack Rubin | 18 |
| Nov. 4, 2020 | Intuit submitted a whitepaper and expert analysis | 17 |
| Nov. 9, 2020 | Intuit submitted a partial CID response | 13, 14 |
| Nov. 10, 2020 | Intuit submitted a whitepaper and expert report | 17 |
| Nov. 16, 2020 | Meeting w/ counsel for FTC and Intuit & Intuit experts | 22(h) |
| Nov. 16, 2020 | Intuit submitted a copy of its experts' presentation | 17 |
| Nov. 16, 2020 | Intuit submitted a partial CID response | 13, 14 |
| Dec. 8, 2020 | Intuit submitted a whitepaper | 17 |
| Dec. 28, 2020 | Intuit submitted a whitepaper and add'l expert analysis | 17 |
| Mar. 16, 2021 | Meeting w/ counsel for FTC and Intuit | 22(i) |
| Mar. 18, 2021 | Intuit submitted a letter responding to questions | 17 |
| May 28, 2021 | Intuit submitted a comment on an FTC workshop | 17 |
| June 23, 2021 | Meeting w/ counsel for FTC and Intuit | 30(a) |
| June 29, 2021 | FTC sent proposed compl. and settlement order to Intuit | 29(a) |
| July 14, 2021 | Intuit sent a settlement communication to FTC & states | 29(b) |
| July 29, 2021 | Meeting w/ counsel for FTC, states, and Intuit | 30(b) |
| Aug. 2, 2021 | Intuit sent a settlement communication to FTC & states | 29(c) |
| Aug. 2, 2021 | FTC sent a settlement communication to Intuit | 29(d) |
| Aug. 3, 2021 | Intuit submitted documents related to customer service | 17 |
| Aug. 12, 2021 | Intuit sent settlement proposal to FTC & states | 29(e) |
| Aug. 13, 2021 | FTC & states sent a settlement communication to Intuit | 29(f) |
| Aug. 16, 2021 | Meeting w/ counsel for FTC, states, and Intuit | 30(c) |
| Aug. 20, 2021 | Intuit sent settlement proposal to FTC & states | 29(g) |

| | Date | Event | Dec. ¶ |
|---|---|---|---|
| | Sept. 28, 2021 | FTC & states sent settlement proposal to Intuit | 29(h) |
| | Oct. 5, 2021 | Meeting w/ counsel for FTC, states, and Intuit | 30(d) |
| | Oct. 13, 2021 | FTC sent a settlement communication to Intuit | 29(i) |
| | Oct. 18, 2021 | Intuit sent settlement proposal to FTC & states | 29(j) |
| | Oct. 19, 2021 | Meeting w/ counsel for FTC, states, and Intuit | 30(e) |
| | Nov. 10, 2021 | FTC & states sent settlement proposal to Intuit | 29(*l*) |
| | Dec. 7, 2021 | Intuit sent a settlement communication to FTC & states | 29(k) |
| | Dec. 10, 2021 | Meeting w/ counsel for FTC, states, and Intuit | 30(f) |
| | Dec. 22, 2021 | Intuit sent a settlement communication to FTC & states | 29(m) |
| | Jan. 11, 2022 | Meeting w/ counsel for FTC and Intuit | 30(g) |
| | Jan. 12, 2022 | FTC & states sent a settlement communication to Intuit | 29(n) |
| | Jan. 31, 2022 | FTC sent a settlement communication to Intuit | 29(o) |
| | Jan. 31, 2022 | Intuit sent a settlement communication to FTC | 29(p) |
| | Feb. 7, 2022 | Meeting w/ counsel for FTC and Intuit | 30(h) |
| | Feb. 17, 2022 | Intuit sent a settlement communication to FTC & states | 29(q) |
| | Feb. 18, 2022 | FTC sent a settlement communication to Intuit | 29(r) |
| | Feb. 25, 2022 | Intuit sent settlement proposal to FTC & states | 29(s) |
| | Mar. 1, 2022 | Meeting w/ counsel for FTC, states, and Intuit | 30(i) |
| | Mar. 2, 2022 | FTC sent a settlement communication to Intuit | 29(t) |
| | Mar. 3, 2022 | FTC & states sent settlement proposal to Intuit | 29(u) |
| | Mar. 17, 2022 | Intuit submitted a whitepaper for the FTC BCP Director | 17 |
| | Mar. 23, 2022 | Meeting w/ FTC BCP Dir. and Intuit (w/ states) | 8(a) |
| | Mar. 24, 2022 | Meeting w/ FTC Chair Khan and Intuit | 8(b) |
| | Mar. 25, 2022 | Meeting w/ FTC Comm'r Slaughter and Intuit | 8(c) |
| | Mar. 28, 2022 | Meeting w/ FTC Comm'r Phillips and Intuit | 8(d) |
| | Mar. 28, 2022 | Meeting w/ FTC Comm'r Wilson and Intuit | 8(e) |
| | Mar. 28, 2022 | Commission voted to approve; action filed | 9 |