SONAL N. MEHTA (SBN 222086)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100
  Sonal.Mehta@wilmerhale.com

DAVID Z. GRINGER (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich St.
 New York, NY 10007
Telephone: (212) 230-8864
  David.Gringer@wilmerhale.com

SETH P. WAXMAN (*pro hac vice*)
HOWARD M. SHAPIRO (*pro hac vice* forthcoming)
JONATHAN E. PAIKIN (*pro hac vice*)
DEREK A. WOODMAN (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Ave NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
  Seth.Waxman@wilmerhale.com
  Howard.Shapiro@wilmerhale.com
  Jonathan.Paikin@wilmerhale.com
  Derek.Woodman@wilmerhale.com

*Attorneys for Defendant*
INTUIT INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>            Plaintiff,<br><br>    v.<br><br>INTUIT INC.,<br><br>            Defendant. | Case No. 3:22-cv-01973-CRB<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFF'S ADMINISTRATIVE MOTION FOR A RULING ON PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER BASED ON THE BRIEFS ALONE OR TO ADVANCE THE HEARING DATE** |

CASE NO.: 3:22-cv-01973-CRB                                                  INTUIT'S RESPONSE TO FTC'S
                                                                                              ADMINISTRATIVE MOTION

1  The FTC waited eight days after the Court entered its March 31 Order setting a briefing schedule and the April 21 hearing date to file its Administrative Motion. The FTC has not identified any changed circumstances to justify reconsideration of the Court's March 31 Order. The only thing different is the new arguments the FTC raised for the first time in its reply filed on April 8. The FTC provides no explanation for why it failed to include these arguments in its initial motion, which would have allowed Intuit to respond to them in its opposition. The FTC nevertheless demands that the Court rule immediately, without giving Intuit an opportunity to be heard on these new arguments. None of these new arguments justify the extraordinary injunctive relief being sought any more than the initial arguments. Nor is there any newfound emergency that requires the Court to reconsider the schedule it set—none of the video ads challenged in the FTC's complaint and TRO Motion are airing and, like the old ads, the newly challenged ads are not deceptive. The Court should deny the FTC's Administrative Motion and maintain the current hearing schedule.

1. On March 31, 2022, this Court set a briefing schedule after reviewing (1) the FTC's TRO Motion (ECF No. 28), (2) Intuit's March 29 Notice of Intent to Oppose Plaintiff's TRO Motion (ECF No. 18), (3) the FTC's March 30 Re-Notice of Emergency Motion asking the Court to accelerate the hearing date then scheduled for April 14 (ECF No. 31), and (4) Intuit's March 30 Re-Notice of Intent to Oppose Plaintiff's TRO Motion (ECF No. 34). The Court held the "FTC's delay in filing this motion for emergency relief weighs against an extremely abbreviated briefing schedule," and directed Intuit to file its opposition on April 4, the FTC to file a reply on April 8, and scheduled a hearing for April 21. ECF No. 37.

2. The FTC waited *eight* days to again ask the Court to advance the hearing date or cancel it altogether and decide the TRO Motion based solely on the briefs. The FTC provides no excuse for this delay other than to suggest that it did not want to burden the Court with "extraneous filings." Admin. Mot. ¶ 4 (ECF No. 50).

3. After the close of business ET on Friday, April 8, the FTC filed a reply that offers new evidence and makes new arguments, most of which could have been included in its opening motion but were not. That evidence includes a new 15-page declaration from Diana Shiller (ECF No. 48-5)

1. that challenges additional ads not mentioned in the FTC's complaint or TRO Motion (and that were not raised by the FTC during discussions with Intuit before the complaint was filed). It includes a new 24-page expert report from Professor Novemsky (ECF No. 48-7), although still no survey from him or any other FTC expert where a consumer was actually shown a supposedly deceptive ad. It also includes a new 22-page declaration (with a 3-page appendix) from Mr. Evans (ECF No. 48-6) with extraneous commentary that neither bears on the FTC's likelihood of success on the merits nor excuses its lengthy delay.

4. The FTC demands that the Court rule on the TRO Motion without giving Intuit an opportunity to respond to this new material. It offers two reasons:

5. *First*, the FTC provides lengthy excuses for waiting until just before the April 18 tax-filing deadline to file its TRO Motion. These include COVID-19, budget constraints, staffing issues, and the burden it faced sifting through the voluminous materials and white papers that Intuit provided during the investigation. None of those excuses explain why this emergency motion could not have been brought months, or even years, earlier. *See Miller ex rel. NLRB v. California Pac. Med. Ctr.*, 991 F.2d 536, 543-44 (9th Cir. 1993) (reversing district court's preliminary injunction and noting that the fact "that the [NLRB] tarried so long before seeking this injunction [was] … relevant in determining whether relief is truly necessary").[1] The FTC also refers to the fact that the parties were engaged in settlement discussions, but that is no excuse either. *See Int'l Ass'n of Plumbing & Mech. Offs. v. Int'l Conf. of Bldg. Offs.*, 79 F.3d 1153, at *3 (9th Cir. 1996)

---

[1] *See also United States v. Arkansas*, 2010 WL 1408818, at *5 (E.D. Ark. Apr. 7, 2010) ("Having waited eight years from the beginning of its investigation, six years since issuing the findings letter, fourteen months since commencing this action, six months since completion of the experts' onsite investigation, and three months since receiving its expert reports, the United States now argues that the status quo cannot continue another six months until the trial on the merits—which is not credible."); *United States v. Nutri-Cology, Inc.*, 1991 WL 1078202, at *6 (N.D. Cal. May 23, 1991) ("[T]he confrontation between [the FDA] and defendants over the products at issue has been ongoing for some nine years now, clearly indicating that there is no new and unexpected … harm posed by the continued marketing of the products to consumers."), *aff'd*, 982 F.2d 394 (9th Cir. 1992); *Silverman ex rel. NLRB v. Loc. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 634 F. Supp. 671, 673 (S.D.N.Y. 1986) (finding that the NLRB's three-month delay in seeking preliminary injunctive relief "seriously, indeed fatally, undermines the Board's position that an injunction is necessary to protect against harm to the public").

1 (unpublished table decision) (holding that "the fact that [the plaintiff] waited seven months before seeking injunctive relief undermines its claim of immediate threatened irreparable injury" even though the plaintiff "argue[d] that it was attempting to seek a settlement during" that seven-month period); *AK Metals, LLC v. Norman Indus. Materials, Inc.*, 2013 WL 417323, at *9-10 (S.D. Cal. Jan. 31, 2013) (denying preliminary injunction in part because the plaintiff had delayed "almost two month[s]" before seeking relief on an "emergency" basis, and settlement discussions did not excuse that delay); *Kerr Corp. v. N. Am. Dental Wholesalers, Inc.*, 2011 WL 2269991, at *3 (C.D. Cal. June 9, 2011) (plaintiff's investigation and settlement discussions with defendant did not excuse the "long [five-month] delay in seeking an injunction," which "necessarily suggest[s] that a lack of urgency exists"). The FTC always held the power to initiate an action at any time if it truly thought there was an emergency, *see* 15 U.S.C. § 53(b), and it failed to do so until late into the third tax season of its investigation. Even then, the decision to bring this lawsuit divided the Commission. *See* ECF No. 48-6 ¶ 9. And, as noted, the FTC also offers no excuse for the eight additional days it waited to file its administrative motion again asking this Court to expedite the hearing schedule.

6. *Second*, the FTC significantly amps up its rhetoric to manifest an emergency—for instance, by referring to the "victimizing" of consumers. Yet despite filing 10 new exhibits totaling 141 pages, the FTC still has identified only 23 consumer complaints related to Intuit's advertising, a tiny fraction of Intuit's overall customer base. Likewise, the FTC can only speculate that Intuit has consistently received high customer-satisfaction ratings and retention rates for reasons other than actual customer satisfaction and the absence of deception. But conjecture is not evidence. And even though the FTC now says it has been working with "one or more survey" experts since at least December 2020, it has not come forward with a single survey where an allegedly deceptive ad was shown to a single consumer.[2] Nor does the FTC address the fact that nearly 14 million people filed their tax returns for free using Free Edition last year. Simply put, unsubstantiated rhetoric, no matter

---

[2] Assuming the FTC's representation is accurate, the fact that none of those surveys have been presented to the Court suggests that the results did not support the FTC's theory.

how inflammatory, does not satisfy the FTC's evidentiary burden to demonstrate that extraordinary emergency relief is needed.

7. Nor has the FTC demonstrated that some newfound exigency has arisen in the eight days since the Court entered its March 31 order. The FTC's reply acknowledges that the so-called "most egregious" ads have been taken down. ECF No. 48 at 2. At the same time, it insinuates that Intuit hid from the Court the "Steven/Spit Take" ad, which itself has not run in nearly two weeks. In fact, while the FTC did not identify that ad as problematic in its complaint or TRO Motion, Intuit discussed the ad in its opposition and in the declaration submitted by Cathleen Ryan. *See* Opp. 4; Ryan Decl. ¶ 18. As Intuit explained in the declaration, that ad was for a limited-time TurboTax Live offer (not Free Edition) and was scheduled to air through March 31 when the offer ended. Ryan Decl. ¶ 18. Accordingly, the fact that Mr. Evans saw the ad when he watched the Oscars on March 27, two days before the FTC's TRO Motion was filed, is not surprising. And it is not clear why, if Mr. Evans saw the ad on March 27, the FTC did not raise it in its initial or amended emergency TRO Motions filed on March 28 and March 29, and instead waited until the April 8 reply to mention it. In any event, as stated in Intuit's opposition, neither that ad nor any other Free Edition video advertisement is currently running and will not run again before next tax season.

8. None of the other apparently less "egregious" hodgepodge of marketing materials first identified in the FTC's reply—which are not properly before the Court, *e.g.*, *SNJ Ltd. v. Comm'r of Internal Revenue*, 28 F.4th 936, 939 n.1 (9th Cir. 2022) (arguments not raised in opening brief are deemed waived)—rise to any sort of emergency. A facial inspection of these new ads (*see* ECF No. 48-5 at 4-11) shows that each makes plain that Free Edition is for "simple tax returns only" and directs consumers to the TurboTax website where the qualifications and price for each TurboTax product are discussed. Similar "simple returns" language was used by the California Tax Franchise Board to explain the limitations of California's free tax-filing program, and, as the FTC acknowledges, the TurboTax webpage provides details as to what qualifies as a simple tax return. *See* ECF No. 48-5 at 14. Given those disclosures, there is a simple explanation for why the FTC has been unable to present relevant survey evidence or consumer complaints to back up its deception

4

claims: by disclosing that Free Edition is "for simple returns only," Intuit makes clear that not everyone can file their taxes for free using Free Edition.

9. Finally, the fact that nothing about the FTC's TRO Motion gave any indication that the marketing materials identified in its reply were the subject of the motion proves the point that the injunction sought is impermissibly vague. It provides no "fair and precisely drawn notice of what the injunction actually prohibits." *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 444 (1974). Although none of the ads were deceptive, Intuit in good faith made substantial efforts to take down the ads that the FTC identified as problematic before the TRO Motion was filed. Now, *two weeks* after that TRO Motion was filed, the FTC has come up with a brand-new list of marketing materials it deems objectionable, even though they have been in circulation for months. With the tax-filing deadline only one week from now, it is well past the time for the FTC to identify the marketing it claims is deceptive. Instead, it has shifted its arguments while demanding the immediate entry of a sweeping and unspecified injunction, which would be nearly impossible to comply with within the next week. Pulling down marketing materials is not as simple as throwing a switch. *See* Ryan Decl. ¶¶ 23-24.

10. For the reasons stated above and in Intuit's earlier submissions, the FTC's repetitive request for an expedited schedule, and its entreaty that the Court rule without giving Intuit any opportunity to respond to its new arguments at the April 21 hearing, should be denied.[3]

Dated: April 11, 2022                    Respectfully submitted,

By: */s/ Sonal N. Mehta*
Sonal N. Mehta (SBN: 222086)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

---

[3] Although the FTC's proposed order asks for a TRO and a briefing schedule for a preliminary injunction, the FTC's reply at times (and inconsistently) appears to request a preliminary injunction with no further briefing. It does so even though it does not dispute that its Administrative Complaint will be decided well before next tax season.

5

Sonal.Mehta@wilmerhale.com

Seth P. Waxman (*pro hac vice*)
Howard M. Shapiro (*pro hac vice* forthcoming)
Jonathan E. Paikin (*pro hac vice*)
Derek A. Woodman (*pro hac vice*)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
1875 Pennsylvania Ave NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
Seth.Waxman@wilmerhale.com
Howard.Shapiro@wilmerhale.com
Jonathan.Paikin@wilmerhale.com
Derek.Woodman@wilmerhale.com

David Z. Gringer (*pro hac vice*)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
250 Greenwich St.
 New York, NY 10007
Telephone: (212) 230-8864
 David.Gringer@wilmerhale.com

*Attorneys for Defendant Intuit Inc.*