SONAL N. MEHTA (SBN 222086)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100
  Sonal.Mehta@wilmerhale.com

DAVID Z. GRINGER (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich St.
New York, NY 10007
Telephone: (212) 230-8800
  David.Gringer@wilmerhale.com

SETH P. WAXMAN (*pro hac vice*)
HOWARD M. SHAPIRO (*pro hac vice*)
JONATHAN E. PAIKIN (*pro hac vice*)
DEREK A. WOODMAN (pro hac vice)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Ave NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
  Seth.Waxman@wilmerhale.com
  Howard.Shapiro@wilmerhale.com
  Jonathan.Paikin@wilmerhale.com
  Derek.Woodman@wilmerhale.com

*Attorneys for Defendant*
INTUIT INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>                    Plaintiff,<br><br>     v.<br><br>INTUIT INC.,<br><br>                    Defendant. | Case No. 3:22-cv-01973-CRB<br><br>**DECLARATION OF CATHLEEN RYAN IN SUPPORT OF DEFENDANT'S STATEMENT RESPONDING TO PLAINTIFF'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER ANOTHER PARTY'S MATERIAL SHOULD BE SEALED** |

Ryan Declaration ISO Defendant's Statement Responding to Plaintiff's Administrative to
Consider Whether Another Party's Material Should Be Sealed
Case No. 3:22-cv-01973-CRB

I, Cathleen Ryan, declare:

1.  Since January 2022, I have served as the Senior Vice President of Marketing at Intuit. From July 2017 to January 2022, I served as the Vice President of Marketing at Intuit. From 2011 to 2017, I served as Intuit's Director of Marketing, Brand, and Digital Advertising. I submit this declaration in support of Intuit's Statement Responding to Plaintiff's Administrative Motion to Consider Whether Another Party's Material Should Be Sealed. I have personal knowledge of the facts set forth in this declaration, and if called to testify as a witness, could and would do so competently.

2.  Intuit seeks to have portions of Plaintiff's Complaint, TRO Motions, and exhibits remain under seal. These documents contain Intuit's confidential business information.

3.  As explained in more detail below, disclosing this confidential information would allow Intuit's competitors to review and replicate Intuit's proprietary business methods for their own use and would allow Intuit's competitors to gain key insight into Intuit's internal business strategy and competitive decision making. Because the online tax preparation industry is extremely competitive, with some of Intuit's competitors running advertisements that mention Intuit's products and pricing by name, Intuit's competitors would likely exploit this information for their own gain. The public disclosure of this information thus substantially prejudices Intuit by causing the company irreparable competitive and financial harm.

4.  Plaintiff's Complaint (ECF No. 1) and Motions for Emergency Motion for Temporary Restraining Order and Preliminary Injunction (ECF Nos. 6, 28) contain trade secrets and confidential business metrics and marketing information tracked by Intuit, including advertising metrics and strategies, business metrics used to track the performance of the company's products, and confidential information relating to the revenue Intuit has received from specific groups of customers. Intuit uses such information to develop its business strategy and treats it as proprietary. Disclosing these confidential metrics would give Intuit's competitors

1 direct insight into how Intuit measures the success of its business and, by disclosing how these metrics are used as part of business analysis, would allow competitors to better position themselves to counter Intuit's business strategy. Intuit's competitors could also use the confidential data regarding revenue Intuit received from specific groups of consumers to undermine Intuit's business strategy or to identify segments of Intuit's customer base to which they could market competing products.

5. The exhibits filed at the same time as the initial TRO Motion (ECF No. 7) contain confidential business metrics tracked by Intuit, such as the revenue Intuit has received from specific groups of customers, data regarding customer behavior, and performance of various products. These documents also contain confidential information regarding Intuit's marketing and advertising strategies. A more detailed discussions of those exhibits follows, with separate discussions for the exhibits cited in the TRO Motion and supporting declarations and those that are not.

I. **Exhibits Cited in The TRO Motion or Supporting Declarations**

6. **Exhibit 4** is an internal memorandum dated October 18, 2013, portions of which reveal confidential information regarding the results of consumer behavior testing conducted by Intuit. Intuit considers this information highly confidential, and if it were publicly disclosed, Intuit's competitors could take advantage of Intuit's proprietary information to test consumer behavior for their own benefit or to use the results from Intuit's testing to target consumers to Intuit's detriment.

7. **Exhibit 80** is a production letter including Intuit's July 31, 2019 responses to the FTC's Civil Investigative Demand, portions of which disclose confidential marketing strategies, including paid search advertising strategy and the metrics deployed by Intuit to track customer usage of its products. This exhibit also includes confidential business data, such as the revenue obtained from specific groups of customers. If this confidential information were publicly

disclosed, Intuit's competitors would gain detailed insight into Intuit's business strategies and metrics and could revise their own business strategies to take advantage of that information. Intuit's competitors could also use these advertising and marketing strategies to target Intuit's customers.

8. **Exhibit 98** is a letter including Intuit's July 31, 2019 responses to the FTC's Civil Investigative Demand, portions of which reveal confidential business metrics tracked by Intuit, specifically product usage by specific groups of customers. This information is non-public, and Intuit relies on it in making strategic business decisions. If this confidential data was disclosed, Intuit's competitors could use it to undermine Intuit's business strategy or to identify segments of Intuit's customer base to which they could market competing products.

9. **Exhibits 103 and 115** are, respectively, an internal memorandum and a February 11, 2019 internal communication attaching a largely duplicative internal memorandum that discusses trade secrets and confidential internal business strategy. The documents reveal Intuit's internal business strategy, including future plans and strategy goals relating to Intuit's free and paid commercial products as well as specific metrics and methods used by Intuit to track the effectiveness and profitability of its products, and how those metrics are used as part of an analysis to shape future business decisions. If this information were publicly disclosed, Intuit's competitors would gain detailed insight into Intuit's product strategy and how Intuit uses confidential metrics as part of business analysis, which would allow Intuit's competitors to revise their own business strategy to take advantage of that information.

10. **Exhibit 150** is a transcript of the October 23, 2020 Investigational Hearing of Cathy Goode, which reveals confidential business information, including the revenue received from particular groups of customers. Intuit relies on this data in making strategic business decisions with respect to its products. If this confidential data was disclosed, Intuit's competitors

1 could use it to undermine Intuit's business strategy and identify segments of Intuit's customer
2 base to which they could market competing products.

3     11.    **Exhibits 152, 155 and 156** are transcripts of the Investigational Hearings of Greg Johnson, Jack Rubin, and myself, which took place on September 29, 2020, October 30, 2020, and October 9, 2020, respectively. Portions of these deposition transcripts reveal highly confidential internal business and marketing strategy, including Intuit's reasons for making key decisions about the marketing and promotion of its products and the process by which Intuit reached those decisions. Exhibits 155 and 156 additionally reveal confidential business metrics and tools deployed by Intuit to track customer usage of its products, which are currently in use by Inuit and central to the development of the company's business strategy. Exhibit 152 also contains highly sensitive, non-public information regarding Intuit employees that have no bearing on the issues in this action. If Intuit's confidential marketing strategy and business metrics were disclosed, Intuit's competitors would gain detailed insight into Intuit's strategy and could revise their own business strategy to take advantage of that information. Finally, the private and sensitive information in Exhibit 152 could be used to needlessly embarrass Intuit's current and former employees in the public sphere.

    12.    **Exhibit 284** is an internal communication dated June 21, 2018, portions of which reveal confidential business information, including the revenue received from particular groups of customers. If this confidential data was disclosed, Intuit's competitors could use it to undermine Intuit's business strategy and identify segments of Intuit's customer base to which they could market competing products.

    13.    **Exhibits 296 and 297** are, respectively, internal communications dated June 5, 2019, and September 20, 2018, with internal slide decks attached. Portions of these slide decks reveal highly confidential trade secrets and business metrics that relate to customer acquisition and retention, as well as product success. Exhibit 296 additionally includes proprietary

information regarding the methods Intuit uses to test consumer preferences, as well as the results of studies testing marketing alternatives that TurboTax may pursue in the future.  Exhibit 297 includes information related to Intuit's financial strategy for fiscal year 2020, including where to decrease and increase marketing spending, and the reasoning behind those decisions.  Intuit uses this information to develop its marketing and financial strategy.  If this information were disclosed, Intuit's competitors would gain detailed insight into Intuit's business strategy and into how Intuit uses its confidential metrics as part of business analysis, which would allow them to better position themselves to counter Intuit's business strategy.

14. **Exhibit 298** is an internal communication with an attached internal slide deck dated November 1, 2018, portions of which detail non-public revenue projections, as well as the confidential metrics and methods Intuit uses to make those projections.  If this confidential information were publicly disclosed, Intuit's competitors would gain direct insight into Intuit's financial health and business strategies and, by disclosing how Intuit's confidential metrics are used as part of business analysis, would allow competitors to better position themselves to counter Intuit's business strategy.

II. **Exhibits Not Cited in The TRO Motion or Supporting Declarations**

15. **Exhibit 12** is an internal document containing notes for an investor conference that took place on June 4, 2019.  The notes reveal confidential business metrics and strategy, including financial projections and data, internal business metrics, the reasoning behind internal strategy decisions, and other non-public data.  Further, the majority of the confidential information in this document discusses Intuit's Quickbooks product and is unrelated to TurboTax or the issues involved in this action.  If this confidential information was disclosed, Intuit's competitors could use it to analyze Intuit's business strategy and learn undisclosed facts about Intuit's finances, which they could use to revise their own business strategy to better position themselves to counter Intuit's business strategy.

16.     **Exhibits 21 and 66** are internal communications dated June 12, 2017, and May 27, 2016, respectively, portions of which reveal confidential and highly sensitive financial data, including the potential financial impact of certain events and decisions, as well as the revenue received from specific groups of customers.  Intuit relies on this data in making strategic business decisions with respect to its products.  If this confidential information were publicly disclosed, Intuit's competitors would gain insight into Intuit's business strategy, including revenue impacts associated with particular customer segments, and could use that confidential information to undermine Intuit's business strategies or identify segments of Intuit's customer base to which they could market competing products.

17.     **Exhibit 26** is an internal communication dated February 21, 2018, with an internally presented slide deck attached.  This slide deck reveals confidential business and marketing strategy and discloses trade secrets regarding the metrics and methods Intuit deploys to track the success of its various forms of advertising.  If this confidential information were released publicly, Intuit's competitors would gain detailed insight into Intuit's strategy and could revise their own business strategies.  By disclosing how confidential metrics are used as part of business analysis, this information would also allow competitors to better position themselves to counter Intuit's business strategy.

18.     **Exhibit 49** is an internal presentation from November 2018, portions of which contain confidential information regarding the methods Intuit uses to test consumer behavior, as well as the results of consumer studies conducted by Intuit.  Intuit currently uses these same methods to test its products and marketing strategies, and thus considers this information highly confidential.  If this confidential information were publicly disclosed, Intuit's competitors could take advantage of Intuit's proprietary information to test consumer behavior for their own benefit or to use the results from Intuit's studies to target consumers to Intuit's detriment.

19.     **Exhibit 67, 76, and 108** are internal communications dated July 10, 2018, April 25, 2019, and October 1, 2018, which contain confidential information related to Intuit's organic search marketing strategy.  If this information were publicly disclosed, Intuit's competitors could use this information to undermine Intuit's organic search strategies by changing their own practices to get more consumers to their websites.

20.     **Exhibits 75, 79, 107, and 109** are, respectively, an internal communication dated April 25, 2019, an internal presentation dated May 14, 2018, an internal presentation dated May 17, 2018, and an internal presentation dated February 14, 2019.  Portions of these exhibits contain highly confidential trade secrets and reveal confidential metrics that Intuit uses to track customer usage of its products.  If publicly disclosed, this information would give Intuit's competitors direct insight into how Intuit measures the success of its business and, by disclosing how these metrics are used as part of business analysis, would allow competitors to better position themselves to counter Intuit's business strategy.

21.     **Exhibits 68, 69, 70, 71, 74, and 92** are internal communications dated July 12, 2018, September 12, 2018, July 25, 2018, October 4, 2018, April 24, 2019, and July 24, 2018.  Portions of these exhibits contain trade secrets and discussion of internal strategy related to organic and paid search marketing, including an analysis of the financial effect of certain decisions, as well as the metrics Intuit uses to track the success of its organic search marketing.  If this confidential information were publicly disclosed, Intuit's competitors would gain detailed insight into Intuit's business strategies and metrics and could revise their own business strategies to take advantage of that information.  By disclosing how confidential metrics are used as part of business analysis, this information would also allow Intuit's competitors to better position themselves to counter Intuit's business strategy.

22.     **Exhibits 112 and 113** are, respectively, January 16, 2019 and February 9, 2019 communications attaching largely duplicative internal memorandums that discuss trade secrets

1  and confidential business strategy relating to Intuit's free and paid commercial products. The
2  documents reveal Intuit's internal business strategy, including future plans and strategy goals,
3  relating to Intuit's free and paid commercial products as well as specific metrics and methods
4  used by Intuit to track the effectiveness and profitability of its products, and how those metrics
5  are used as part of an analysis to shape future business decisions. If this confidential information
6  were publicly disclosed, Intuit's competitors would gain detailed insight into Intuit's business
7  strategies and metrics and could revise their own business strategies to take advantage of that
8  information.

9  23.  **Exhibits 151 and 154** are transcripts of the Investigational Hearings of Mandy
10 Ison and Monica Muilenberg, which took place on October 15, 2020, and October 1, 2020,
11 respectively. Portions of these transcripts reveal highly confidential marketing strategy,
12 including key marketing decisions, as well as metrics and tools deployed by Intuit to track
13 customer usage of its products and product performance that are currently in use by Inuit and
14 central to the development of the company's business strategy. If this confidential information
15 were publicly disclosed, Intuit's competitors would gain detailed insight into Intuit's business
16 strategy and metrics and could revise their own business strategy to take advantage of that
17 information.

18 24.  The requested relief is narrowly tailored to protect the confidentiality of this
19 information.

22 I declare under penalty of perjury, under the laws of the State of California, that the
23 foregoing is true and correct and that this Declaration was executed as of the date shown below
24 at San Diego, California.

Ryan Declaration ISO Defendant's Statement Responding to Plaintiff's Administrative to
Consider Whether Another Party's Material Should Be Sealed
Case No. 3:22-cv-01973-CRB
8

1 | Dated: April 18, 2022

*Cathleen Ryan*